427 So.2d 1120 (1983)
The STATE of Florida, Petitioner,
v.
Vincent F. MAISTO, Respondent.
No. 82-2539.
District Court of Appeal of Florida, Third District.
March 15, 1983.
Jim Smith, Atty. Gen., and Penny Hershoff Brill, Asst. Atty. Gen., for petitioner.
Weiner, Robbins, Tunkey & Ross and Geoffrey C. Fleck, Miami, for respondent.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
Petitioner, State of Florida, brings on for review by Writ of Certiorari[1] a trial court decision which grants the respondent's motion in limine and prohibits petitioner from introducing similar fact evidence of other acts as is permitted by Section 90.404(2)(a), *1121 Florida Statutes (1981)[2], in carefully limited situations.
The respondent is charged with kidnapping a child under the age of thirteen years with the intent to commit or facilitate the commission of a lewd, lascivious or indecent assault or act upon her in violation of Section 787.01, Florida Statutes (1981). He is also charged with committing a lewd, lascivious or indecent assault or act upon the child, age nine years, without the intent to commit sexual battery, in violation of Section 800.04, Florida Statutes (1981).
There is no dispute as to the facts of the offense as charged or the collateral acts. The only issue is identification of respondent as the perpetrator. The facts are taken from the state's petition.
On July 25, 1981, at approximately 7:00 a.m., the victim, age nine years old, was at the Miller Square Shopping Center, located at southwest 137th Avenue and 56th Street in Dade County, Florida, when she was approached by a man described as middle-aged and white, later identified as the respondent. The respondent asked the victim if she had seen his black poodle. He then gave her money to help him look for the dog. The respondent returned and spoke to the victim again, this time asking her to go with him in his car to find the dog. She agreed and entered the vehicle which she described as a blue car.
With the victim in the car, respondent left the area of the shopping center and turned onto a dirt road. He asked the victim to urinate on a towel, telling her that that was how his daughter was able to find his dog. The victim refused to urinate stating she was afraid of the respondent. He then told her to take off her clothes or she would be put out of the car. The victim removed one of her legs from her jeans but was still unable to urinate. The respondent then asked the victim to help him urinate. He pulled his pants down, exposed his genitals, and instructed the victim to move her hand up and down on his genitals. The victim complied after the respondent threatened to put her out of the car with no clothes on. After the respondent had ejaculated into a towel he put his trousers on, instructed the victim to get dressed, then drove her back to the shopping center. At a photo line-up conducted later, the victim identified a picture of the respondent.
The facts surrounding the two collateral acts which the state sought to introduce, and which were prohibited by the court, are set out in the next two paragraphs.
On May 31, 1981, at dusk, but before dark, a ten-year-old girl rode her bicycle through the Kendall Mall, located at southwest 107th Avenue and 88th Street. While at the mall, she was approached by a man in a light green car which she believed to be a Mercedes. The man gave her money to help him find his black poodle. After an unsuccessful trip around the mall looking for the dog, she again talked to the man and started to go home. She was followed by the man who stopped her and told her to go back to the mall. She followed that instruction. He then asked her to urinate on some boxes "because he had a daughter who would urinate when she was nervous". From a photo line-up, the ten-year-old identified the respondent.
The second so-called collateral act occurred on September 20, 1981, and involved a twelve-year-old. The twelve-year-old was riding home on her bicycle at a West Kendall location, southwest 176th Avenue, between 58th and 59th Streets near the Miller Square Mall. A man pulled up in a car, described as a dark brown, four-door, which looked like a Mercedes. He said to her that he would give her twenty-five dollars if she would get in the car and help him find his dog in Miller Square. She went home and told her mother, who called the police. Two *1122 officers came to her home, and she went with them to look for the brown car. They saw the vehicle near Miller Square, parked with another police car alongside. The police car in which the twelve-year-old was riding, passed by the stopped car and she identified the respondent as the man who had approached her near the mall.
The court granted respondent's oral motion in limine to exclude the testimony regarding the two collateral events, holding that they were not "hallmark" or "signature" aspects to be traceable only to the respondent.
We agree with the trial court's determination that, as to the events of September 20, 1981 involving the twelve-year old, there is nothing so unique or particularly unusual about the act so that it would tend to establish that the actor in that transaction is the same actor in the charged crime. Sias v. State, 416 So.2d 1213 (Fla. 3d DCA 1982). Certainly, the prejudice that might flow from the use of that evidence is outweighed by any possible relevance it may have to the charged offense. Rodriquez v. State, 372 So.2d 1167 (Fla. 3d DCA 1979). The essence of the September 20, 1981 act is that (1) a middle-aged white man, (2) in the vicinity of Miller Square, (3) offered a twelve-year old girl, (4) money to help him look for a dog. Such evidence does not satisfy the stringent test for the admission of evidence of similar crimes.
We think the events of May 31, 1981, are admissible similar acts evidence in the classic mode. The similarities between the offense charged and the act of May 31, 1981 are:
(1) the victim and the minor involved in the collateral act were girls ages nine and ten,
(2) they both identified their perpetrator as a white middle-aged male, then identified him by photographs,
(3) they were asked to help locate a black poodle,
(4) both were paid to help in the search,
(5) both were accosted in the mall of a Southwest Dade shopping center, several blocks apart,
(6) the offense and the collateral act occurred within a period of less than two months, and
(7) both girls were asked to urinate by the perpetrator.
Concededly, the first six acts are general similarities which, alone, might not qualify as admissible similar acts evidence. But the first six similarities, which serve to bolster the identification, along with the seventh similarity  which stands out as a "ritual" connected to the deviant conduct  is the unique modus operandi which makes relevant and admissible the evidence of respondent's May 31st act. Sias v. State, 416 So.2d at 1216.[3]
At this point, we need not be concerned that the collateral act will become a feature in the trial of the case. The court has the power and duty to insure that the state does not needlessly focus on the collateral act, which duty we must assume will be faithfully discharged. The state will not be accountable if the defense chooses to dwell on the subject. Sias v. State.
Insofar as the order in limine prohibits use at trial of testimony regarding the events of May 31, 1981, the order is quashed and the cause is remanded for further consistent proceedings.
NOTES
[1] We have jurisdiction pursuant to Article V, Section 4(b)(3) of the Florida Constitution and Rules 9.030(b)(2)(A) and 9.030(b)(3) of the Florida Appellate Procedure. See State v. Steinbrecher, 409 So.2d 510 (Fla. 3d DCA 1982).
[2] Sec. 90.404(2)(a), Fla. Stat. (1981) provides:

(2) OTHER CRIMES, WRONGS, OR ACTS. 
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[3] In Sias v. State, we held that notwithstanding a five-day lapse between homosexual batteries committed by defendant upon his fourteen-year-old and eleven-year-old victims, evidence of the prior attack on the eleven-year-old was admissible where on both occasions defendant was accompanied by the same individual, put a piece of clothing over victim's head, committed the act, then removed the clothing after completion of the sexual act.