447 So.2d 243 (1983)
Jeffrey JOSEPH, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-591.
District Court of Appeal of Florida, Third District.
September 13, 1983.
*244 Bennett H. Brummer, Public Defender and Leon E. Sharpe, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Theda R. James and Jack B. Ludin, Asst. Attys. Gen., for appellee.
Before SCHWARTZ, C.J., and HENDRY, BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON and FERGUSON, JJ.[*]

ON REHEARING EN BANC
DANIEL S. PEARSON, Judge.
When it appeared that a majority of the panel which heard Joseph's appeal concluded that the introduction of evidence of a crime collateral to the offense charged necessitated a reversal of Joseph's convictions, and that this conclusion directly conflicted with the earlier affirmance by a different panel of this court of the convictions of Joseph's co-defendant at trial, who had sought relief on the identical ground, see Neal v. State, 414 So.2d 1146 (Fla. 3d DCA 1982), this court, on its own motion, decided to consider the above case en banc, without argument. Having now so considered the case, we reverse Joseph's conviction and remand for a new trial.
Joseph and one Billy Gene Neal were charged in an information with the sexual battery and kidnapping of a Haitian female, H.B., alleged to have occurred on *245 August 30, 1980. By separate information, these same two defendants were charged with the same offenses said to have been perpetrated against another Haitian female, I.G., on September 5, 1980. Pursuant to Section 90.404(2)(b)1, Florida Statutes (1979), the State notified Joseph that it intended to introduce evidence of both offenses in the trial of each information. Joseph filed pretrial motions in both cases to exclude the introduction of the offense collateral to the crime charged in the particular information upon which he was to be tried. The trial court denied the motions, and, based on that denial, Joseph moved to consolidate the two cases for trial.
Joseph's primary point on appeal is, of course, that the trial court erred in permitting the State to adduce evidence of the August 30 and September 5 crimes in the same case. He contends that the separate incidents did not share a uniqueness about the perpetrator of the offense or the manner in which the offenses were committed so as to tend to establish, independently of an identification of him by the victim of the collateral crime, that he committed the crime charged. See Sias v. State, 416 So.2d 1213 (Fla. 3d DCA 1982); Beasley v. State, 305 So.2d 285 (Fla. 3d DCA 1974).
His contention is met at the outset by the State's argument that by moving to consolidate the two cases, thus insuring the introduction of the evidence of both crimes in the same trial, Joseph has waived any objection he might have had. We do not agree.
It is clear from the record that the motion to consolidate was made only because the trial court had ruled that the collateral crime evidence would be admitted,[1] and that the asserted error of the trial court's earlier ruling was preserved for review. To hold otherwise would be to force the defendant, the State and the court to go through two separate trials for no purpose other than to formalistically preserve an appellate point, which, in our view, would be a manifest waste of judicial time and labor.
Having decided that Joseph has not waived the point by moving to consolidate, we now address the merits. The State argues that the uniqueness shared by the offenses against H.B. and I.G. lies in the following "unusual" circumstances: in each instance the assailants approached the victim in a small car  either a Datsun or Toyota  which became the scene of the assaults; the assaults were perpetrated by two black males, one lighter than the other; on both occasions the lighter-skinned male drove the vehicle; the victims were abducted from a public street during nighttime hours; the assaults occurred in the same general area of Miami; a knife was used to *246 threaten the victim in each case; and, finally, the victims were released after the assaults. Whatever significance might attach to these similarities pales in light of the dissimilarities between the offenses. One offense was committed at 10:15 p.m., the other at 6:00 a.m. One victim was abducted while in the company of a friend, the other was alone. H.B. was asked by the assailants to come closer to the car, the passenger of the car exited the car and abducted her. Only the passenger sexually assaulted H.B., while the driver sat indifferently on the hood of the car. I.G. was asked if she wanted a ride and if she wanted to buy jewelry, both assailants exited the car to abduct her, and both assailants sexually assaulted her. In the case of I.G., the driver peered in the window of the car and laughed while the passenger raped her. H.B.'s legs were tied and she was badly beaten during the assault; I.G. was not bound and, at most, was slapped. In the first episode there was no act of oral sex; in the second, both of the assailants demanded and received oral sex from the victim. H.B. testified that the passenger was armed with a knife and the driver unarmed; I.G. said the passenger had a gun and the driver a knife. Lastly, H.B. was offered a ride near her home when the assault concluded; I.G. was simply told she could leave. We conclude that these marked dissimilarities in the manner and method in which the crimes were perpetrated, as compared to similarities so general as to be found in a vast number of like crimes, render the evidence of the collateral crimes irrelevant, and therefore inadmissible, to establish the identity of the accused. See Davis v. State, 376 So.2d 1198 (Fla. 2d DCA 1979); Helton v. State, 365 So.2d 1101 (Fla. 1st DCA 1979); Banks v. State, 298 So.2d 543 (Fla. 1st DCA 1974); Davis v. State, 276 So.2d 846 (Fla. 2d DCA 1973); Franklin v. State, 229 So.2d 892 (Fla. 3d DCA 1969). Accordingly, we reverse the judgments of conviction and remand the cause for new and separate trials on each information, to be conducted in accordance with the views expressed in this opinion. Our decision makes it unnecessary to address the remaining points on appeal pertaining to appellant's sentence. We do, however, address the matter of Neal's convictions.
We are fully aware that the relief we have accorded Joseph cannot extend to Neal, whose appeal is not before us. Were we still within the same term of court when the mandate in Neal's case issued, we would recall the mandate and reverse his convictions as well. See Chapman v. St. Stephens Protestant Episcopal Church, 105 Fla. 683, 138 So. 630 (1932). But our authority to recall the mandate in Neal's case past the term in which it issued is highly questionable, if not clearly lacking.[2]
However, our disability to recall the mandate in Neal's case does not mean that Neal is without remedy and that his convictions must forever stand. Our system of justice, properly concerned with the finality of decisions, is flexible enough to allow that the doctrine of finality may give way "when a more compelling objective appears, *247 such as ensuring fairness and uniformity in individual adjudications." Witt v. State, 387 So.2d 922, 925 (Fla. 1980).
"Considerations of fairness and uniformity make it very `difficult to justify depriving a person of his liberty or his life, under process no longer considered acceptable and no longer applied to indistinguishable cases.'" Id. at 925.
A majority of this court, sitting en banc, has concluded that under the facts of this case, evidence of the collateral crime was inadmissible and no waiver of objection occurred. It follows, of course, that we have also concluded that the panel in Neal's case misapplied existing principles of law to the identical facts. We have, however, announced no new principle of law; and, since no change of law is involved, we think that the stringent requirements for collateral attack laid down in Witt v. State, supra, the concern of which was the retroactive application of a new rule of law, need not be met.[3]
Witt simply determined "which `changes of law' will be cognizable under this state's post-conviction relief machinery." Id. at 928. Absent a change of law, Witt is no impediment to Rule 3.850 relief, and such relief is available, as it has always been, to correct fundamental defects which inherently result in a miscarriage of justice and present exceptional circumstances justifying collateral relief. See Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Thus, presented with a situation not unlike the one at bar, the Court of Appeals for the Second Circuit, in United States v. Loschiavo, 531 F.2d 659 (2d Cir.1976), affirmed the district court's order vacating the defendant's conviction. Loschiavo had been convicted of bribing one Morales, a deputy director of the New York Model Cities Administration. He claimed at trial that since Morales was an employee of New York City, rather than the federal government, Morales was not therefore a federal official within the meaning of the federal bribery statute. On direct appeal, Loschiavo's conviction was affirmed.[4] Shortly thereafter, the Second Circuit reversed the conviction of Del Toro and another defendant who had been separately accused of bribing Morales. The reversal was based on the ground that Morales was not a federal official, and thus, no federal crime occurred. In affirming the grant of collateral relief to Loschiavo, the court stated:
"The injustice of the case is sharply pointed up by reflecting that it was the same man, Morales, who received similar bribes in like circumstances from both Del Toro and Loschiavo. If then, this Court denied the petition and permitted the conviction of Loschiavo to stand, after it had reversed the conviction of Del Toro on the ground that the jury had been charged that it could find Morales was a federal `public official' when it knew that the same charge had also been given to the jury in Loschiavo's case, the frustration and defeat of justice would be glaringly apparent to the most myopic and obtuse." Id. at 667.
Here, were Joseph to be given a new trial and Neal denied one, we think the defeat of justice would be evident to even the blind and vacuous. Therefore, should Neal, without undue delay, move the trial court to vacate his convictions under Rule 3.850 in reliance on this decision, we direct the trial court to grant Neal such relief and a new trial.
Reversed and remanded.
BARKDULL, J., concurs in result only.
*248 BASKIN, Judge (dissenting).
To hold, as does the majority, that counsel may stipulate to proceeding to trial and then assert as error on appeal the trial court's conduct in following that stipulation is to place trial judges in untenable positions. It was incumbent upon counsel to maintain his objection if he wished to challenge the court's ruling in an appeal. His failure to do so constitutes a waiver of the objection. Requirements that litigants object, file motions, and renew motions and objections are designed to afford the trial court an opportunity to correct erroneous rulings. It is here that judicial economy lies. We are not confronted with an Ashby[*] nolo plea situation in which counsel may proceed and still preserve a ruling for appeal because the appellate decision will dispose of the entire matter. There is no question of dispositiveness in these proceedings. I would hold that counsel's concession that the cases be tried together forecloses review on that ground. I would therefore affirm the conviction.
If the merits were to be reached, I again disagree with the majority' conclusion. Joseph's defense was mistaken identity. Similar fact evidence may be used to establish identity and absence of mistake, Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); Florida Evidence Code, section 90.404(2) Florida Statutes (1979), as long as there exists "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which there are individual manifestations." 2 Wigmore, Evidence § 304 (Chadbourn rev. 1979) (emphasis in original); see also Wilson v. State, 330 So.2d 457 (Fla. 1976).
A comparison of the offenses discloses similarities with features so common they can be explained only by a general plan. For example, both assaults were committed in the back seat of a small Japanese automobile. On both occasions, the driver left the vehicle while the passenger raped the victim. Both assaults were committed by two black males, and the driver was the lighter-skinned male. Both victims were assaulted following abduction from public streets at night in the same Miami neighborhood. Each victim was threatened with the use of a knife. Both victims were released after the assaults. These similarities render evidence of the collateral crime admissible to establish identity. The trial court committed no error in its rulings.
For these reasons, I would affirm the conviction.
HUBBART, Judge (dissenting).
I must respectfully dissent. I would decline to conduct an en banc hearing in this cause under Fla.R.App.P. 9.331(a) and would return the case for a decision on the merits to the three-judge panel of this court originally assigned to decide this matter. I think it is singularly inappropriate to invoke our extraordinary en banc jurisdiction in this case, particularly in the fashion in which it is accomplished herein.

I
At the outset, I do not think that a proper en banc hearing under Fla.R.App.P. 9.331(a) has been held in this case. This case was originally assigned to a three-judge panel of this court before whom the case was briefed and orally argued on the merits by the parties. Subsequently, a majority of the judges on the assigned panel sought an en banc hearing on this case because they wished to recede from a controlling decision of this court in a companion case, involving a co-defendant tried below at the same trial as the defendant Jeffrey Joseph, and raising the identical evidentiary point on appeal. Neal v. State, 414 So.2d 1146 (Fla. 3d DCA 1982). The court sitting en banc acceded to this request and voted to conduct an en banc hearing under Fla.R.App.P. 9.331(a). Since then, however, no such en banc hearing has ever been conducted. The parties have not filed any briefs or any memoranda or made any oral argument to this court en banc; *249 indeed, the parties have not even been notified that this cause is now an en banc proceeding. I am certain they will find the court's en banc decision today quite a surprise, as the last they heard this case had been submitted to a three-judge panel of this court. I, therefore, think it unwarranted for this court to decide this case en banc on the merits, as it does today, when in fact no en banc hearing has ever been held.

II
Beyond that, I think it most improvident to invoke our extraordinary en banc jurisdiction under Fla.R.App.P. 9.331(a) in order to overrule, as here, a prior controlling decision of this court, Neal v. State, supra, when (a) that decision was rendered in a companion case over which we have lost jurisdiction, (b) our refusal to follow the companion case is based solely on a disagreement with the prior court's application of a valid rule of law to a set of facts not likely to re-occur again, and (c) the overruling of the companion case is otherwise unjustified under the doctrine of stare decisis. This is particularly true when, as here, the court en banc is forced to invent an unauthorized, ad hoc, post-conviction remedy at the trial level in order to undo the result reached in the controlling companion case, which holding in itself is in conflict with a long and well-settled line of Florida decisions; we create thereby more mischief by overruling the companion case than we would had we followed it.
So far as I am aware, this is the first decision in the history of this state wherein an appellate court has refused to follow a prior controlling decision of the same court in a companion case over which the court has lost jurisdiction. Indeed, until today I thought it axiomatic that controlling decisions in such companion cases were binding on the court under the doctrine of stare decisis. See e.g., Rackley v. Slade, 141 Fla. 310, 193 So. 70 (1940); Balzebre v. 2600 Douglas, Inc., 273 So.2d 445 (Fla. 3d DCA 1973); Chatmon v. Lumbermens Mutual Casualty Co., 268 So.2d 551 (Fla. 3d DCA 1972); Metropolitan Dade County v. E.B. Elliott Advertising Co., 214 So.2d 511 (Fla. 3d DCA 1968). Agreed, we may in appropriate cases invoke our extraordinary en banc jurisdiction under Fla.R.App.P. 9.331(a) in order to recede from a prior decision of this court, In re Rule 9.331, 416 So.2d 1127, 1128 (Fla. 1982), but only, I would submit, when the doctrine of stare decisis permits an exception allowing us to do so. No such stare decisis exception has been invoked in this case, and, indeed, none could be invoked in order to reach the novel result arrived at herein. Absent such an exception, I think we are bound by our prior precedents whether we agree with them or not. Old Plantation Corp. v. Maule Industries, Inc., 68 So.2d 180, 183 (Fla. 1953); State ex rel. Molter v. Johnson, 107 Fla. 47, 144 So. 299 (1932).
Admittedly, the doctrine of stare decisis is not inflexible and exceptions thereto have on occasion been recognized by the courts, but only in rare and unusual cases, else the law would be most unstable and entirely unpredictable. "Stare decisis is at least the everyday working rule of our law." B. Cardozo, The Nature of the Judicial Process 20 (1921); "[f]or it is an established rule to abide by former precedent, where the same points come up again in litigation: as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion." 1 W. Blackstone, Commentaries *69. "[T]he court which lays down the rule is not as a general proposition at liberty to depart from it, but must be consistent in its holdings and apply the same legal consequence to the same state of fact when it arises again." R. Pound, "Survey of the Conference Problems: Status of the Rule of Judicial Precedent" 14 U.Cin.L.Rev. 324, 330 (1940). In Florida, the few decisions which have expressly overruled or altered prior controlling cases appear to fall, generally speaking, into three limited categories, none of which have any application to the instant case.
First, there are those cases in which a Florida court has overturned a rule of law established by its prior decisions on the *250 ground that the rule had become outmoded or obsolete due to large-scale social and legal changes.[1] Second, there are those cases in which the same court has overturned a rule of law established by prior precedent because its continued existence was considered fundamentally incorrect or unjust.[2] Finally, there are those cases in which the same court has overturned a rule of law established by prior precedent because it conflicted with a contrary rule announced in another of the court's controlling decisions, and the latter was thought to announce the better rule.[3] These general categories, by no means exhaustive, are reflective of the overall common law exception to the doctrine of stare decisis which permitted a court of last resort in rare cases to overrule or alter a rule of law established by one of its prior decisions when the rule was "evidently contrary to reason," "clearly contrary to divine law" or "manifestly absurd or unjust," in which event it was said that the former rule never was the law, having been erroneously declared at the outset as the established custom of the realm. 1 W. Blackstone, Commentaries 69. In a more modern context, the exception to the common law doctrine of stare decisis, which the above three categories reflect, has been restated as follows:
"It is the duty of a court of last resort to abide by its own former decisions, and not to depart from or vary them unless entirely satisfied, in the first place, that they were wrongly decided, and, in the second place, that less mischief will result from their overthrow than from their perpetuation. This is the proper application of the maxim, `stare decisis.'"
H. Black, Handbook on The Law of Judicial Precedents 10 (1912)
It is plain, in my view, that the instant case does not fall within the above three *251 Florida categories of established departures from stare decisis or within the overall common law exception to the doctrine of stare decisis, as no rule of law is sought to be overturned or altered herein. Also, no issues of large-scale social and legal change or serious future injustice are involved which might otherwise challenge the continued existence of established rules of law. In addition, this is not a case in which we are resolving conflicting rules of law or questioning the correctness or wisdom of these rules as announced by prior precedent. Instead, the court herein refuses to follow the result reached in the companion Neal case solely because it disagrees with how the companion case has applied an otherwise valid and sound rule of law to a given set of facts not likely to re-occur again. That, I submit, is a totally insufficient basis for departing from the doctrine of stare decisis. See also R. Aldisert, The Judicial Process 777-877 (1976). Beyond that, as will be seen later, more mischief is created by overruling the companion case herein than by following it  which, again, places this case outside the common law exception to the doctrine of stare decisis.
Moreover, it should be clear that Fla.R. App.P. 9.331 is not in itself an exception to the doctrine of stare decisis. The rule does not entitle this court to order an en banc hearing whenever, as here, a majority of the assigned panel does not wish to follow a prior controlling decision of this court; such an en banc hearing is appropriate only when the doctrine of stare decisis otherwise admits an established exception permitting this court to overrule the prior precedent. Any other result would mean that this court en banc sits as a mini-supreme court over the panel decisions of this court, and is in no way bound by any panel decision rendered in the 26-year history of this court. If that is the law, the doctrine of stare decisis has been considerably undermined in this jurisdiction and an unconstitutional second court has, in effect, been created to review the panel decisions of this court. I emphatically disagree with such a result.
It is axiomatic that a judge is not a knight errant roaming at will in pursuit of the judge's personal concepts of law and justice. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980). A judge is bound by the prior precedents of the jurisdiction in which the judge serves whether he or she personally agrees with such decisions or not. We admit, I think, of a dangerous exception to this ancient rule of practice if we allow, as here, a district court of appeal en banc to pick and choose which of its own panel decisions it wishes to follow. We are generally bound by those panel decisions, until properly changed by the legislature or a higher court, whether we agree with such decisions or not; indeed, they are plainly the decisions of this court, they are in no sense second-class decisions rendered by an inferior court, and they are entitled to stare decisis effect. It therefore seems elementary that the en banc jurisdiction established by Fla.R.App.P. 9.331(a) in this court does not in itself create an exception to the doctrine of stare decisis; en banc hearings may be invoked under the rule in order to overrule prior decisions of this court only where the doctrine of stare decisis otherwise permits an established exception allowing us to do so. As no such exception has been or could be invoked in this case, I think it extremely improvident for this court to grant an en banc hearing herein in order to overrule our prior controlling decision in the companion case of Neal v. State, supra.
Finally, I think the court fashions an entirely unauthorized, ad hoc, post-conviction remedy under Fla.R.Crim.P. 3.850 in order to undo the result reached in the Neal decision, over which we have admittedly lost jurisdiction. In this connection, the court creates more mischief by overruling the Neal decision than it would had it followed Neal, which, again, places this case outside the common law exception to the doctrine of stare decisis. Plainly, the court has established a new ground for collateral attack of a criminal conviction under Fla.R.Crim.P. 3.850, heretofore unknown under Florida law, for the benefit of the co-defendant Neal so as to avoid the *252 patent injustice caused by our inconsistent rulings herein. It should be pointed out, however, that the injustice flowing from these inconsistent rulings is created only because this court refuses to follow the decision in the companion Neal case. I know of no decision in this state or this country which remotely supports such a novel result. The non-binding federal cases relied upon by the court in its opinion in no way deal with the fact pattern presented by this case [wherein an appellate court, as here, refuses to follow a companion case, creating thereby an injustice by its own inconsistent rulings] and, therefore, can offer no support for the court's decision herein.
Indeed, I view the court's decision herein allowing collateral attack relief for the co-defendant Neal as standing in conflict with those Florida cases which have long held that the erroneous admission of evidence at trial does not constitute a valid ground for collateral attack of a criminal conviction under Fla.R.Crim.P. 3.850.[4] Without question, the only error which the court now belatedly concludes occurred at Neal's trial was the erroneous admission at trial of collateral crimes evidence; this, as stated, is patently an invalid ground for collateral attack relief under Fla.R.Crim.P. 3.850 under the established law of Florida. We create, then, an unsettling conflict with an established line of Florida decisions in our effort to right the wrong created by our refusal to follow the companion Neal decision; and in so doing, we create more mischief by overruling Neal than we would had we followed it.
I dissent from the court's decision to invoke our extraordinary en banc jurisdiction in this case.
HENDRY and BASKIN, JJ., concur.
NOTES
[*] JORGENSON, J., did not participate in the decision of the court.
[1] COURT: The motion in limine is denied. Williams Rule request is granted.
"Both defense objections are preserved for the record.
"Now, in light of my position on Williams, the Court's position is maybe we should consolidate the cases.
"[ATTORNEY FOR CO-DEFENDANT]: I have that written motion to file with the Court. It's a motion to consolidate and it specifically states that `Both of the offenses charged in this case triable before this Court, involve identical parties and now, involve substantially similar witnesses.'
....
"THE COURT: Here's what I am going to do: I am granting the motion to consolidate. "Now, in light of that statement by the Court, if, of course, the State wants to withdraw your Williams Rule tomorrow, for presentation, then we will proceed. Then, I will vacate the motion to consolidate.
"On the other hand, the Court will try both cases together and if you want to present your Williams testimony, then we are going to try all cases in one shooting match.
"[ATTORNEY FOR CO-DEFENDANT]: Okay. For the record, let me state that the motion to consolidate was filed on the premise and that's why I waited until right now that the Williams Rule evidence, the motion would be granted, and be presented that way.
"THE COURT: Did you join in the motion to consolidate?
"[JOSEPH'S ATTORNEY]: Yes, Judge, only because my motion in limine prohibiting Williams Rule was denied.
"THE COURT: Okay.
"[ATTORNEY FOR CO-DEFENDANT]: That's my basis, too.
"THE COURT: Okay.
"Both of you guys have got that in the record to protect your Appellate motions."
[2] In State Farm Mutual Automobile Insurance Co. v. Judges of the District Court of Appeal, Fifth District, 405 So.2d 980 (Fla. 1981), the court held that the en banc hearing rule does not extend the power or jurisdiction of the district courts to recall their mandates past the term of issuance for the sole purpose of resolving intradistrict conflicts. It could be said that since our purpose in recalling the mandate in Neal's case would be to prevent a miscarriage of justice, not to resolve an intradistrict conflict, we are not prevented by State Farm from recalling Neal's mandate out of term. But see Westberry v. Copeland Sausage Co., 397 So.2d 1018 (Fla. 1st DCA 1981). However, we take little comfort in such a narrow and perhaps strained reading of State Farm. We take even less comfort in Lovett v. State, 29 Fla. 384, 11 So. 176 (1892), which allowed that the "court has the power at any time to amend its judgment if it is erroneous by reason of a misentry of the clerk, or by reason of any other mistake, or that such judgment may be set aside and treated as a nullity if it has been procured by fraud, or is the result of misapprehension," id. 11 So. at 180 (emphasis added). In our view, the present case does not come within the Lovett exceptions. Last, we have considered The Florida Bar v. Schreiber, 420 So.2d 599 (Fla. 1982), as possible precedent, but find no indication therein that a recall of mandate, as distinguished from an opinion without mandate, was involved.
[3] The court held in Witt that "an alleged change of law will not be considered in a capital case under Rule 3.850 unless the charge: (a) emanates from this Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance." 387 So.2d at 931.
[4] It appears that Loschiavo did not raise on direct appeal his claim concerning Morales' status.
[*] State v. Ashby, 245 So.2d 225 (Fla. 1971).
[1] See e.g., Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) (contributory negligence rule in tort actions overruled); Gates v. Foley, 247 So.2d 40 (Fla. 1971) (rule precluding a wife from obtaining tort recovery for loss of consortium overruled); Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969) (rule that a defendant's liability insurer in negligence actions cannot be joined as a party defendant overruled); Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957) (rule that a municipality is immune from liability for the torts of its police officers overruled); Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480 (1941) (common law rule that a father has a superior right of guardianship over minor children in child custody cases overruled); Layne v. Tribune Co., 108 Fla. 177, 146 So. 234 (1933) (common law rule on libel per se modified as applied to a modern newspaper); Christopher v. Mungen, 61 Fla. 513, 55 So. 273 (1911) (rule precluding the children of former slaves from inheriting property overruled); see also West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976) (altering, in effect, prior Florida law by adopting a strict liability in tort doctrine in products liability cases).
[2] See e.g., Wallace v. Luxmoore, 156 Fla. 725, 24 So.2d 302 (1946) (rule precluding a court of equity from assuming jurisdiction in a probate matter altered); Therrell v. Reilly, 111 Fla. 805, 151 So. 305 (1932) (rule precluding a bank from increasing its capital stock without securing an amendment to its charter overruled); Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780 (1931) (rule precluding tort recovery from a tortfeasor's estate overruled); Western Union Telegraph Co. v. Wilson, 32 Fla. 527, 14 So. 1 (1893) (rule of damages applicable in a contract action overruled); Coffman Realty, Inc. v. Tosohatchee Game Preserve, Inc., 381 So.2d 1164 (Fla. 5th DCA 1980), aff'd, 413 So.2d 1 (Fla. 1982) (rule precluding a trial judge from refusing to accept an affidavit filed with a motion for rehearing on a summary judgment, overruled); see also McHale v. Farm Bureau Mutual Insurance Co., 409 So.2d 238 (Fla. 3d DCA 1982) (rule on measure of damage in negligence actions involving damage to personal property as announced in two prior Third District decisions, overruled) (may be technically bad law as this is a panel opinion, rather than an en banc opinion, see In re Rule 9.331, 416 So.2d 1127, 1128 (Fla. 1982)).
[3] See e.g., The Florida Bar v. Kimball, 425 So.2d 531 (Fla. 1982) (selecting correct rule regarding reinstatement of a disbarred attorney from among court's own conflicting precedents); Garner v. Ward, 251 So.2d 252 (Fla. 1971) (resolving conflicting interpretations of wrongful death statute, disapproving court's own prior cases insofar as they conflicted); Williams v. State, 110 So.2d 654 (Fla. 1959) (resolving court's own conflicting interpretations of rule regarding admissibility of similar crimes evidence); Blue v. Weinstein, 381 So.2d 308 (Fla. 3d DCA 1980) (resolving a conflict among the court's own cases as to whether a valid counterclaim for abuse of process could be directed against process served in the main action).
[4] See e.g., Ferby v. State, 404 So.2d 407 (Fla. 5th DCA 1981); Nelson v. State, 281 So.2d 49 (Fla. 3d DCA 1973); Whitlow v. State, 256 So.2d 48 (Fla. 2d DCA 1971); Kish v. State, 253 So.2d 889 (Fla. 3d DCA 1971); Sellers v. State, 249 So.2d 519 (Fla. 3d DCA 1971); Garner v. State, 218 So.2d 460, 463 (Fla. 2d DCA 1969); Paulk v. State, 211 So.2d 591 (Fla. 2d DCA 1968); Robinson v. State, 194 So.2d 29 (Fla. 2d DCA 1967); Brown v. State, 187 So.2d 669 (Fla. 3d DCA), cert. denied, 192 So.2d 485 (Fla. 1966); Ziegler v. State, 180 So.2d 477 (Fla. 3d DCA 1965); Coyner v. State, 177 So.2d 715, 717 (Fla. 3d DCA 1965); Chayter v. State, 176 So.2d 382 (Fla. 3d DCA 1965); Kirkland v. State, 165 So.2d 774 (Fla. 3d DCA 1964); Duncan v. State, 161 So.2d 718 (Fla. 3d DCA 1964); Austin v. State, 160 So.2d 730, 732-33 (Fla. 2d DCA), appeal dismissed, 164 So.2d 579 (Fla. 1964).