654 So.2d 617 (1995)
Grady Lunde LEWIS, Appellant,
v.
STATE of Florida, Appellee.
No. 93-2435.
District Court of Appeal of Florida, Fourth District.
May 3, 1995.
*618 Richard L. Jorandby, Public Defender, and David McPherrin, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joan L. Greenberg, Asst. Atty. Gen., West Palm Beach, for appellee.

ON MOTION FOR CLARIFICATION
WARNER, Judge.
We grant the motion for clarification, withdraw our previous opinion and substitute the following in its place to correct a clerical error.
In this appeal from a conviction for two counts of indecent assault we consider whether the trial court erred in admitting evidence of prior similar bad acts by the accused. We conclude that the prior acts were not sufficiently similar and were error to admit. We also conclude that the error was not harmless.
This case arises out of lewd acts that occurred in the presence of three children when they were playing outside of their homes on an October evening. The three children were walking a dog when a man in a car called one of the girls over and asked her for directions to Sunrise Boulevard. He asked whether she wanted "to make five bucks." She then glanced into the car and saw the man playing with his exposed penis. One of the other little girls approached the car a few moments later, and the man also asked her for directions and whether she wanted to make five dollars. She walked away from the car, but in walking to a friend's house, she passed the car again and observed the man touching the outside of his pants, rubbing his hands up and down on his penis.
Several other children testified who had been in the area. Their testimony conflicted *619 on the color of the car, the type of license plate, and what was on the seat inside the car. More importantly, the two victims' testimony conflicted. One of the girls testified that the man was wearing shorts, while the other testified that he had on long pants. All of the children remembered that the man did not have a beard. However, when appellant was arrested five days after the incident, the arresting detective testified that he had a full beard. While the children identified the appellant in a photographic lineup, at least one of them testified at her deposition that she could be wrong about her identification.
During the course of the trial the state was permitted to elicit evidence of a prior similar bad act. A young girl from North Carolina testified that approximately a year before she was rollerblading in her home town in North Carolina when a man asked her for directions to a store. She gave the man directions, but he indicated that he did not understand. After she wrote the directions down for the man, he mumbled "five dollars" and asked her if she would like to make some money. She responded "no". The man then asked if she had ever seen a man. At that she skated away. She went to the police station where she identified appellant as the man in the car. However, in the courtroom in Florida, she could not identify appellant as the man who had approached her. On cross examination, she admitted that the man in the car in North Carolina neither had his clothes off nor touched his private parts. Her mother was also called to the stand and identified appellant as the man her daughter saw, although she indicated that he had gained a lot of weight and had darker hair. Over defense objection, this evidence was admitted by the court.
When the material issue in the case is identity, mere general similarity of incidents will not render the similar crime admissible. There must be identifiable points of similarity showing such a unique combination of characteristics that it leads to a conclusion that only the accused would have committed both crimes. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); Crump v. State, 622 So.2d 963, 967-968 (Fla. 1993).
State v. Maisto, 427 So.2d 1120 (Fla. 3d DCA 1983), illustrates the difference between admissible similar acts and inadmissible similar acts. The victim in Maisto, a nine-year-old girl, was approached at a shopping center by a middle-aged white man who asked the victim if she had seen his poodle. He then gave her money to help him search for the dog. She agreed to accompany him. They left the shopping center. The assailant then asked the little girl to urinate on a towel, stating that was how his own daughter could find the dog. When she refused, the man ordered the victim to take her clothes off. She removed one of her legs from her jeans. The assailant then asked the victim to help him urinate. After pulling down his pants, he instructed the victim to move her hand up and down on his genitals until he ejaculated into a towel. Once this was accomplished, he put his clothes back on and drove the victim back to the mall. The victim identified Maisto as her assailant.
The state attempted to introduce two collateral acts in the proceedings. In the first, the victim was approached at a mall and asked to help find a poodle. The man also asked her to urinate on some boxes and referred to similar conduct by his daughter. The victim of this incident also identified Maisto as her assailant.
The second collateral incident involved a young girl riding her bike near the mall where the first incident took place. A man in an automobile offered the young girl twenty-five dollars if she would help him find his dog at the mall. She did not get in, went home, and told her mother who called the police. This little girl also identified Maisto.
The trial court in Maisto had granted a motion in limine as to both collateral incidents. On certiorari review, the Third District agreed that as to the second of the two incidents, there were no unique characteristics which would establish that the actor in the second transaction was the same as the one in the instant case. "The essence of the September 20, 1981 act is that (1) a middle-aged white man, (2) in the vicinity of Miller Square, (3) offered a twelve-year old girl, (4) money to help him look for a dog. Such evidence does not satisfy the stringent test *620 for the admission of evidence of similar crimes." Id. at 1122. However, the court found that the first incident did meet the test of similarity in that in both incidents the girls were approximately the same age; they were asked to help locate a black poodle; both were paid to help; both were accosted in a mall; and, most significantly, both were asked to urinate. The court construed this last aspect as the "unique modus operandi" which made the evidence admissible.
In the instant case we can list the following similarities:
(1) the victims were girls of approximately the same age;
(2) they were approached by a man in a car;
(3) the man asked for directions;
(4) The man then asked if they wanted to make five dollars.
The similarities end there. In the charged crime, the perpetrator masturbated while seated in the car. In the collateral crime, the perpetrator simply asked whether the victim had ever seen a man. The events were several months apart and in different states. The fact that the man asked for directions and asked the girls if they wanted to make five dollars is hardly unique. Children are warned every day not to approach strangers in vehicles, not to approach vehicles to give directions, or to accept money or candy. The fact that the monetary amount was the same in each instance is hardly so unique as to make it an "unusual pattern of criminal activity." Crump, 622 So.2d at 967-968.
We cannot deem the admission of this evidence to be harmless error. There were conflicts in the evidence, and while the children all identified appellant as the perpetrator, they also testified that he had no beard when he approached them, whereas five days later the arresting officer testified that he had a full beard. This alone creates at least a slight doubt. Moreover, to declare the admission of the prior incident harmless would be to ignore the standard set forth in State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986):
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
As to the remaining issues, which may be addressed in any retrial, we find error in only one other evidentiary ruling made by the trial court. In rebuttal, the arresting detective was asked, "Detective, and once he did ask to stop the interview, did you stop or did you force him to keep going?" Answer, "No, it was stopped." This was a direct comment on the right to remain silent that was not invited by cross examination. Crawford v. State, 473 So.2d 700 (Fla. 4th DCA 1985), reversed on other grounds, 491 So.2d 1142 (Fla. 1986). On any retrial, this comment should be avoided.
Reversed and remanded for a new trial.
DELL, C.J., and HERSEY, J., concur.