HAZOURI, J.
David Miller appeals from his convictions for two counts of attempted first degree murder and two counts of burglary with an assault or battery. Case number 4D00-3170 involves victim, Noel Culhane. Case number 4D00-3171 involves victim, Kristen Anderson. The cases were consolidated for trial and have been consolidated on appeal.
Miller raises three points on appeal. First, Miller argues the trial court erred in denying his objections to Williams[1] rule evidence being admitted at trial because there was no unique modus operandi from which to infer that only he could have been the perpetrator. Second, Miller argues the trial court erred when it denied his motion to suppress Anderson’s identification because the lineup was held over his objection without the presence of counsel. Third, Miller argues the trial court erred *1167 in sentencing him as a violent career criminal because the requirements of section 775.084(l)(c), Florida Statutes (1997), were not met. We reverse and remand for separate trials as to point one and affirm as to point two. Point three is moot as we reverse the convictions.
On September 22, 1998, Kristin Anderson decided to walk her dog after returning home from work. It was approximately 11:00 P.M. When she exited her second floor apartment, she shut her door, but did not lock it. When she returned, the door to her apartment was slightly ajar. She entered the apartment and, once inside, locked the door behind her and let her dog loose.
As Anderson walked over to her answering machine, she was struck from behind and knocked face down to the floor. Her attacker stabbed her repeatedly in the back and cut her across both forearms and the front of her chest. The knife used in the attack came from Anderson’s own steak knife set. Anderson fought back against the attack and refused to comply with the attacker’s demands which were “Don’t move, don’t say a word.” Anderson continued to kick and scream at the attacker until he ran into her spare bedroom which was immediately in front of the location where they had landed on the floor. The attacker then ran out of the bedroom covering his face from the top of his nose to the bottom of his chin with a white pillowcase. Once he reached the door, he had difficulty unlocking the door to exit, but he eventually was able to unlock the door and flee the apartment.
Anderson described the attacker as being 5'10" or 5'11" with a medium build and in his mid-twenties. He spoke without an accent. She described him as well groomed, wearing denim type pants and a white shirt. Although she never saw his face, she “got a good look at him from the back” as he exited the apartment. She was shown a photo lineup in which Miller was included but could not identify him.
On January 30, 1999, while Miller was in custody in Broward County, a court order was obtained in order to subpoena him to stand in a live lineup in reference to an unrelated case in Palm Beach County. Anderson was asked to view the lineup at that time as well. No one else who had been in the previous photo lineup was included in the live lineup. Anderson identified Miller as her assailant. A curtain was drawn across the lineup and each man was asked to say “don’t move, don’t say a word.” Anderson immediately recognized Miller’s voice. Miller was then charged with attempted first degree murder and burglary with an assault or battery.
On November 10, 1999, fourteen months after the attack on Anderson and ten months after Miller was charged in this case, the state provided notice of its intent to offer evidence of similar acts by Miller.
Specifically, the alleged similar fact evidence that the state sought to introduce at trial arose from a different case pending in Palm Beach County involving an attack on Noel Culhane which had occurred fifteen months prior to Anderson’s attack. In that case, it was alleged that on June 28, 1997, at 3:12 a.m., Noel Culhane was inside her apartment in Boca Raton, Florida. After hearing a knock at her door, she walked to the door and asked who was knocking. A male voice responded, “It’s your neighbor, I live right across the street.” He continued, “Somebody is in your backyard.” Culhane then opened her door and observed a white male who again stated that he thought someone was in her backyard. After a brief conversation in which Culhane asked the man his name and where he lived, she closed the door and went to wake a friend who was spending the night. Moments later the door *1168 opened and the white male entered the apartment. He asked Culhane if she had a phone and she responded she did. She then walked towards the man, he took a step back and while facing Culhane, he stabbed her once in the left side of her chest. He then fled the area.
Culhane described her attacker as a man in his thirties, clean-shaven, with short brown or dirty blond hair. He appeared to be approximately 5'9" or 5'10" with a thin, small or medium build. She recalled that he had a large, unusual nose and thought he had blue eyes but was not sure.[2]
On February 5, 1999, one year and eight months later, Culhane saw Miller’s picture in a newspaper article which described him as a suspect in several attacks on women. Culhane contacted Detective Guy DiBene-detto of the Boca Raton Police Department and claimed that the person whose picture she saw in the article was the assailant in her case. She was unable to identify him in a photo lineup. Thereafter, on August 25, 1999, six months after the article in the newspaper first appeared, Culhane identified Miller in a live lineup conducted at the Palm Beach County Jail. Miller was then charged as the assailant in Culhane’s case.
Miller filed a motion in limine to preclude the introduction of similar crime evidence. Miller argued that there was insufficient identifiable points of similarity in both attacks to make them unique and unusual. A hearing was held on Miller’s motion in limine and in overruling Miller’s motion and objection to the introduction of similar crime evidence, the trial court stated:
The court finds that there are a great many similarities between the cases. All of those similarities which [the prosecutor] alluded to in his argument. And I won’t go through all of them but the, the young white female, the apartment complex, late at night, the manner of entry, the similarities of injuries, the knife wounds, were that not, or strike that, were that all of the matters, the court would agree with [defense counsel], that there has not been a sufficient uniqueness established.
However, the court finds that these two cases are extremely unique and the basis for that is that in all of this court’s time hearing criminal cases, and in reading advance sheets, this court has never, or certainly doesn’t remember having a crime committed where an individual enters into a young woman’s apartment and then stabs her with absolutely no motivation for that, with no crime being committed, no robbery, no burglary, no prior contact, not boyfriend girlfriend, absolutely positively no reason for it.
And that is the fingerprint. That establishes the separate and unique aspect of these cases.
Because normally there’s a basis and a reason for a crime being committed. I want the money. I want the car. I’m angry at the person. I’ve lost my temper and I shot him. Or whatever. I’m defending myself. But there’s a basis and reason and logic, however strained the logic and reason may be, to commit the crime.
But here we have none of that. There is absolutely no basis or reason in either one of these cases for the crime to have been committed other than to have committed the crime. And that is the uniqueness. That is so rare in, in the annals of criminal law, to willfully and intentionally hurt another individual without cause and without reason. Not *1169 that there haven’t been crimes of such nature having been committed, but they’re rare. And coupled with all of the other facts that have been elicited by the court, that is, specifically young women, specific times, the apartment complex, the women, if you will, having left the apartment, so as to give the attacker an opportunity to view their, the victim and then thereafter to perpetrate the crime.
Based upon that uniqueness, very unique fact, the state’s motion is granted and the defendant’s motion, or objection is denied.
The trial court then consolidated the two cases for trial.
“Evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion.” Williams v. State, 110 So.2d 654, 662 (Fla.1959); see also § 90.402, Fla. Stat. (1999). Section 90.404(2), Florida Statutes (1999), provides:
(2) Other crimes, wrongs, or acts.—
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
If the sole relevancy of each of the above incidents to each other is to establish the propensity or bad character of Miller, they are inadmissible.
The material issue sought to be proved by the state’s notice of intent to use similar fact evidence was the defendant’s identity. The state sought to prove Miller was the assailant in Anderson’s case by showing his modus operandi, i.e., the circumstances of both Culhane’s ease and Anderson’s case.
The mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being com/pared. A mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations.
Drake v. State, 400 So.2d 1217, 1219 (Fla.1981)(emphasis added).
In Drake, the court held collateral crime evidence irrelevant to prove identity because the assailant’s act of binding the hands of the victims in both cases was not sufficiently unusual to point to the defendant. Id. See also Thompson v. State, 494 So.2d 203, 204 (Fla.1986); Peek v. State, 488 So.2d 52 (Fla.1986) (reversible error to admit similar fact evidence which was similar but did not have “sufficient unique pattern of criminal activity”). In Lewis v. State, 654 So.2d 617 (Fla. 4th DCA 1995), this court held it was error to admit evidence of a prior similar bad act to prove that the defendant was the person who committed the instant crime. “There must be identifiable points of similarity showing such a tmique combination of characteristics that it leads to a conclusion that only the accused would have committed both crimes.” Id. at 619 (emphasis added).
It is insufficient that a collateral crime witness can identify the accused. Stephens v. State, 662 So.2d 394 (Fla. 5th DCA 1995).[3] Instead, “the points of simi *1170 larity must have some special character or be so unusual as to point to the defendant.” Peek, 488 So.2d at 55 (citing Drake, 400 So.2d at 1219). The Florida Supreme Court has held that the degree of uniqueness required to admit Williams rule evidence as proof of identity is “fingerprint” type of evidence. See State v. Savino, 567 So.2d 892, 894 (Fla.1990) (citations omitted). It is not enough that there is greater similarity than dissimilarity between the crimes, but rather there must “be something so unique or particularly unusual about the perpetrator or his mo-dus operandi that it would tend to establish, independently of an identification of him by the collateral crime victim, that he committed the crime charged.” Sias v. State, 416 So.2d 1218, 1215 (Fla. 3d DCA), (emphasis added) rev. denied, 424 So.2d 763 (Fla.1982). See also Beasley v. State, 305 So.2d 285 (Fla. 3d DCA 1974) (proof of break-ins, other than one with which defendant was charged, was not relevant to prove identity or a criminal course of conduct where state’s proof disclosed nothing particularly unique or unusual about the manner in which the break-ins were committed or about a modus operandi).
In this case, there are no identifiable points of similarity pervading both incidents that are so unique or unusual that they point to Miller as the perpetrator of both crimes and establish, independently of Culhane’s identification of him, that he committed the offense against Anderson. In Anderson’s case, she went alone to walk her dog at night, and left the door of her second floor apartment unlocked while she was out. Her assailant (1) was already inside the apartment when she returned; (2) struck her from behind; (3) punched her, cut her with a knife and stabbed her repeatedly in the back, across both forearms and on the front of her chest during an obvious struggle where he was always behind her; (4) ran into the bedroom and came out attempting to conceal his identity from the top of his nose down past his chin with a pillow case as he fled from the apartment; and (5) used a knife from Ms. Anderson’s own kitchen knife set.
In contrast, Culhane and a friend were inside her first floor apartment when she heard a knock on her door late at night. She asked who was knocking and her assailant (1) responded that .he was a neighbor who lived across the street and that someone was in her backyard; (2) after she closed the door to wake her friend, the assailant opened her door again without attempting to conceal his identity and entered her apartment asking if she had a phone; (3) as Culhane answered yes and walked back towards the door, the assailant took a step back and then from a point in front of her stabbed her one time in the chest; (4) the assailant then fled; and (5) the knife used in the attack was the assailant’s. From the foregoing, the circumstances of Culhane’s attack suggest no method, manner, or mode of operation in common with the circumstances of Anderson’s attack. Furthermore, not only do the cases lack a common modus operan-di, but the similarities are few. The only similarities between the two cases are that the victims were white females, about the same age and height, the incidents occurred late at night in apartment buildings and knives were used as weapons.
The number of “marked dissimilarities in the manner and method in which the crimes were perpetrated, as compared to similarities so general as to be found in a vast number of like crimes,” renders the evidence of the attack irrelevant and inadmissible to establish the identity of Miller. *1171 Joseph v. State, 447 So.2d 243, 246 (Fla. 3d DCA 1983); see also Davis v. State, 376 So.2d 1198 (Fla. 2d DCA 1979). In the instant case, the “marked dissimilarities” are that in one instance the perpetrator hid in the victim’s apartment, went to great length to conceal his identity and used a weapon obtained from the victim’s apartment and in the other, he used a ruse to gain entry into the apartment, made no attempt to conceal his identity and brought his own weapon.
The trial court has wide discretion in determining the admissibility of evidence and, in the absence of an abuse of discretion, the trial court’s ruling will not be overturned. See McMann v. State, 698 So.2d 386, 387 (Fla. 4th DCA 1997). However, in the instant case, we hold that the trial court did abuse its discretion. It is clear from the trial court ruling that it found that the uniqueness or “fingerprint” of these two crimes was the trial court’s view that these crimes had no apparent motivation. The motivation in these two criminal acts may be the simple desire to cause physical harm to the victims. Even if the trial court was correct that there was no “apparent motivation” for these crimes, the lack of motive is not a “fingerprint” sufficient to warrant the admissibility of similar crime evidence.
Unfortunately we live in a society where random and senseless acts of violence happen all too frequently and many times young women are the target of these violent acts. The admission of the similar crime evidence was harmful error and we reverse the convictions and remand for separate trials.
Affirmed in part and reversed in part.
GUNTHER and KLEIN, JJ., concur.

. Williams v. State, 110 So.2d 654 (Fla.1959).

. In 1998, Miller was 44 years old, was 6'2" in height and weighed 180-185 lbs.

. In Stephens, where a defendant was charged with a liquor store robbery, evidence that defendant committed a hotel robbery was inadmissible because there were "no special characteristics which are so unusual as to point to Stephens.” The court stated, "[t]he *1170 fact that a collateral crime witness can identify the accused is insufficient.” Id. at 395 (citing Dix v. State, 485 So.2d 38, 39 (Fla. 2d DCA 1986)).