400 So.2d 1217 (1981)
Raymond Lee DRAKE, Appellant,
v.
STATE of Florida, Appellee.
No. 54850.
Supreme Court of Florida.
May 21, 1981.
Rehearing Denied July 31, 1981.
*1218 Jack O. Johnson, Public Defender and Paul C. Helm, Asst. Public Defender, Bartow and Bruce S. Rogow, Fort Lauderdale, of Pearson, Josefsberg & Tarre, Miami, for appellant.
Jim Smith, Atty. Gen. and James S. Purdy, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Drake appeals his conviction of first-degree murder and sentence of death. We have jurisdiction[1] and reverse his conviction.
Drake was charged with the murder of Odette Reeder. Late in November 1977, Drake and Reeder met by chance at a lounge in Pinellas Park. After several drinks, they left the bar together. Reeder indicated to friends that she would return shortly; her friends thought she was going outside with Drake to smoke marijuana. Neither Reeder nor Drake returned to the lounge, and none of her friends ever saw Reeder alive again.
Some six weeks later, Reeder's body was discovered in a wooded area in Oldsmar. The body was found lying on its back with a skirt covering the face and neck, a blouse beneath the body, and the hands tied behind the back with a bra. Although badly decomposed, the body exhibited eight stab wounds in the lower chest and upper abdomen. The medical examiner opined that these wounds caused Reeder's death, but she could not rule out other possibilities. The State theorized that Reeder was raped but this could not be confirmed by medical opinion because of the decomposition of the lower part of the body.
Part of the State's proof against Drake was evidence that on two prior occasions he had sexually assaulted two different women and had, during the course of those assaults, bound his victims' hands behind their backs.
The first incident occurred twenty months before Reeder's death. Drake had met K.T. at a lounge and offered her morphine. *1219 Thereupon they drove to Drake's apartment where he injected K.T. with the drug and then demanded payment. When she said she would pay him later, Drake stripped off her clothes, bound her hands behind her back, and violated her both vaginally and anally with a broomstick and a bottle. Then, "to give [her] a good rush," Drake choked her until she passed out. When she regained consciousness he choked her again, but this time K.T. only pretended to faint. Drake would not let her leave, and she had to make her escape as Drake slept.
The second incident occurred just two months before the Reeder homicide. On this occasion a girl that Drake had been dating, one P.B., and Drake's male roommate returned to Drake's apartment after spending the evening drinking. After a while P.B. undressed and went into the bathroom. When she returned to the bedroom, Drake was alone in the room where his roommate had been. Angry at the thought that she had engaged in sexual activity with his roommate, Drake threw P.B. on the bed, tied her hands behind her, struck her several times in the abdomen, and eventually attempted intercourse.
Williams v. State[2] holds that evidence of similar facts is admissible for any purpose if relevant to any material issue, other than propensity or bad character, even though such evidence points to the commission of another crime. The material issue to be resolved by the similar facts evidence in the present case is identity, which the State sought to prove by showing Drake's mode of operating.
The mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being compared. A mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations. Given sufficient similarity, in order for the similar facts to be relevant the points of similarity must have some special character or be so unusual as to point to the defendant. The only similarity between the two incidents introduced at trial and Reeder's murder is the tying of the hands behind the victims' backs and that both had left a bar with the defendant. There are many dissimilarities, not the least of which is that the collateral incidents involved only sexual assaults while the instant case involved murder with little, if any, evidence of sexual abuse. Even assuming some similarity, the similar facts offered would still fail the unusual branch of the test. Binding of the hands occurs in many crimes involving many different criminal defendants.[3] This binding is not sufficiently unusual to point to the defendant in this case, and it is, therefore, irrelevant to prove identity.
As an alternate ground for admission of the P.B. incident, the State argues that incident relevant to prove motive for the murder, that Drake raped Reeder and then killed her to avoid revocation of his parole.[4] Under the State's theory, a similar fear caused Drake's failure to complete his sexual attack on P.B., and the P.B. incident would demonstrate that Drake had a pervasive fear of revocation. This argument is not persuasive, especially in light of the fact that there is no evidence that his reason for stopping the attack on P.B. was such a fear. No other basis for relevancy has been offered to this Court, nor can we fathom any basis ourselves. Purely and simply, the similar facts evidence in this case tends to prove only two things  propensity and bad character.
Having considered the collateral facts testimony and its potential impact on any jury hearing the details of Drake's prior *1220 acts, we find that the erroneous admission of this similar facts evidence requires reversal of Drake's murder conviction. We do not accept appellant's contention, however, that, absent the similar facts evidence, there is insufficient evidence to sustain a conviction of murder. We must therefore order a new trial.
Drake contends there were other errors. Since we are reversing his conviction we decline to address those arguments except to note that there appears to be a technical violation of the Miranda rule when Drake's statements to Detective Pondakos were admitted.
We reverse Drake's first-degree murder conviction and remand the cause for a new trial.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] 110 So.2d 654 (Fla.), cert. denied., 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[3] This Court heard oral argument on a case involving a similar binding of the hands on the very morning it heard Drake's case.
[4] At the time Drake was on parole for the sexual battery of K.T.