442 So.2d 171 (1983)
Eric Jim CHANDLER, Appellant,
v.
STATE of Florida, Appellee.
No. 60790.
Supreme Court of Florida.
July 28, 1983.
Rehearing Denied January 16, 1984.
Richard Joseph Saliba of Saliba & McDonough, Vero Beach, for appellant.
Jim Smith, Atty. Gen. and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Eric Jim Chandler appeals his convictions and sentences of death for first-degree murder. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. We affirm the convictions but vacate the death sentences and remand for resentencing.
An Indian River County grand jury returned an eight-count indictment charging Chandler with two counts of first-degree murder, two counts of robbery with a deadly weapon, three counts of trafficking in stolen property, and one count of aggravated assault. The charges arose from the robbery of an elderly couple and their death by bludgeoning. The victims, Harold *172 and Rachel Steinberger, were found lying face down, Mr. Steinberger's hands bound behind him, in a wooded area behind their residence. Each victim had also been stabbed numerous times in the back. The jury found Chandler guilty of all counts and recommended the death penalty. The trial court concurred with the jury's advisory sentence. In addition, the defendant received three ten year sentences for trafficking in stolen property and a five year sentence for aggravated assault.
Chandler raises a number of issues in this appeal. Having examined and heard argument on each of them, we find only two of these issues merit extensive discussion.[1]
The first issue we address relates to admission, pursuant to subsection 90.404(2), Florida Statutes (1979), and our decision in Williams v. State, 110 So.2d 654 (Fla. 1959), of evidence of Chandler's previous conviction of crimes similar to those charged in the instant case. In an effort to establish identity, the state submitted evidence of Chandler's conviction in Texas approximately seven years prior to his trial below. The victim in the Texas criminal episode had been abducted against his will, taken to a remote area, and, with his hands tied behind his back, beaten about the head with a blunt instrument, and robbed. Chandler argues that here, as in Drake v. State, 400 So.2d 1217 (Fla. 1981), the coincidence of one or two details, such as the tying of the victims' hands behind their backs, is not sufficiently relevant to the issue of identity to be admissible under *173 subsection 90.404(2) and the Williams rule. In Drake, however, there were a number of significant dissimilarities between the collateral crime and the crime charged, including the fact that the previous crime involved only sexual assault while the crime charged later was murder with little, if any, evidence of sexual abuse. The dissimilarities pointed to here, such as time of day the crimes were committed and the specific blunt instrument used, suggest differences in the opportunities with which Chandler was faced rather than significant differences in modus operandi as in Drake.
The common points shared by Chandler's Texas crime and the crime charged below may not be sufficiently unique or unusual, when considered individually, to establish a common modus operandi. We find, however, no error in the trial court's determination that these points, considered one with another, establish a sufficiently unique pattern of criminal activity to justify admission of evidence of Chandler's collateral crime as relevant to the issue of identity in the crime charged.[2] In so concluding, we recognize that the passage of several years between the collateral crime and the crime charged has often been reckoned to destroy the relevance of the previous crime to the issue of identity. Where, as in this case, however, the defendant spent almost the entire time between the two offenses incarcerated for the first crime, the relevance of that collateral crime to the proof of a common modus operandi is preserved, if not enhanced. See Rossi v. State, 416 So.2d 1166 (Fla. 4th DCA 1982).
We turn now to the issue of whether the trial court, in dismissing certain jurors for cause over the defendant's objection, violated the rule established by the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The line of questioning employed during voir dire by the prosecutors below suggests that some confusion exists as to the precise standard set forth in Witherspoon. The last paragraph of note 21 of that opinion is unambiguous:
We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.

Id. at 522 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in original).
Examination of the voir dire record before us indicates that at least two[3] of the venire members for whom the state was granted cause challenges never came close to expressing the unyielding conviction and *174 rigidity of opinion regarding the death penalty which would allow their excusal for cause under the Witherspoon standard set out above. Both these venirewomen stated unequivocally that their feelings toward capital punishment would not affect their ability to return a verdict of guilty, if such a verdict were warranted by the evidence. As for the penalty phase, it is not enough that a prospective juror "might go towards" life imprisonment rather than death.[4] It is not enough that he or she "probably would lean towards life rather than death, if [the aggravating and mitigating circumstances] were equal."[5] The excusal for cause of these two individuals clearly violates the guidelines of Witherspoon.
The state urges, however, that any error in the granting of cause challenges was purely harmless. The argument is made that, since the state used a total of only eight of the eighteen peremptory challenges available to it, the challenged members of the venire would have been excused peremptorily had the trial court refused to grant cause challenges. We do not deny that this harmless error theory has a certain logical appeal. Nevertheless, our analysis of the case law, especially the decision in Davis v. Georgia, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976), compels us to conclude that the dismissals for cause complained of by Chandler cannot be sanctioned as "harmless error," regardless of whether the state, at trial, could have peremptorily challenged the same jurors.
In Davis the Supreme Court of Georgia acknowledged that one prospective juror had been excluded in violation of the Witherspoon standard. Nevertheless, the court affirmed the conviction and death sentence, reasoning that the exclusion of a single death-scrupled venireman did not deny the petitioner a jury representing a cross-section of the community. In reversing the state court decision the majority opinion of the United States Supreme Court stated flatly:
Unless a venireman is "irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings," he cannot be excluded; if a venireman is improperly excluded even though not so committed, any subsequently imposed death penalty cannot stand.

Id. at 123, 97 S.Ct. at 400 (citations omitted, emphasis supplied). As noted in a dissenting opinion by Justices Blackman and Rehnquist and Chief Justice Burger, the plain language of the majority in Davis precludes application of a harmless-error test. Moreover, the Fifth Circuit Court of Appeals has addressed itself to the very situation faced in the case before us. In Burns v. Estelle, 592 F.2d 1297 (5th Cir.1979), the fifth circuit summarized Witherspoon and its progeny, including Davis, as providing, inter alia:
2. No jury from which even one person has been excused on broader Witherspoon-type grounds ... may impose a *175 death penalty or sit in a case where it may be imposed, regardless of whether an available peremptory challenge might have reached him.
Id. at 1300. See also Moore v. Estelle, 670 F.2d 56 (5th Cir.1982).
Our understanding of these federal court decisions is confirmed by the decision of the Georgia Supreme Court in Blankenship v. State, 280 S.E.2d 623 (Ga. 1981). In earlier decisions, including Alderman v. State, 241 Ga. 496, 246 S.E.2d 642, cert. denied, 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666 (1978), cited by the state here, the Georgia high court had adopted the view that Witherspoon-type error could be harmless when the challenged juror(s) could have been reached by unused peremptory challenges. Upon reexamination of Davis and Burns, the court was forced to reverse its prior position:
[Having reexamined Davis and Burns,] we now hold that in cases where the death penalty is imposed, the improper exclusion from the initial panel of an otherwise qualified juror in violation of Witherspoon v. Illinois is harmful error regardless of whether the state utilized all of its peremptory strikes.
Blankenship, 280 S.E.2d at 623 (citations omitted).
Accordingly, we affirm the convictions, but, because of the erroneous exclusion for cause of the aforementioned two prospective jurors, we vacate the sentences of death imposed below and remand for resentencing. Such resentencing shall, of course, include an advisory verdict to be rendered by a jury chosen in compliance with the holding expressed herein.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in part and dissents in part with an opinion.
ADKINS, Justice, concurring in part and dissenting in part.
I concur in the affirmance of guilt and dissent to the order vacating the sentence.
It is impossible for an appellate court to examine the cold words in a record and make an independent judgment that a juror is impartial. The trial judge is in a position to observe the demeanor of the juror during the interrogation and, from his observations, can form an opinion as to the attitude of the juror. In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), it is stated that a juror may be excused for cause if he could not consider a penalty of death, or, if his attitude against the death penalty would be such as to interfere with the impartiality required to sit as a juror in the guilt phase of the trial.
In Christopher v. State, 407 So.2d 198, 200 (Fla. 1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1761, 72 L.Ed.2d 169 (1982), the following question was presented to us for consideration on appeal:
Did the trial court systematically exclude for cause prospective jurors who did not state they were irrevocably committed to vote against the death penalty, but voiced only general, indefinite reservations to capital punishment, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and article I, sections 9 and 16 of the Florida Constitution?
In disposing of this issue, we said:
As to the first issue, the law is settled that the competency of a challenged juror is a mixed question of law and fact and is to be determined by the trial judge in his discretion. Manifest error must be demonstrated before the judge's decision will be disturbed. Singer v. State, 109 So.2d 7, 22 (Fla. 1959); Ashley v. State, 370 So.2d 1191, 1194 (Fla. 3d DCA 1979). No such error has been demonstrated in the case sub judice.

407 So.2d at 200.
The trial judge, being in a position to study the demeanor of the jurors and hear their responses first-hand, made factual *176 findings and no manifest error has been demonstrated in this regard. Challenges for cause are appropriate if a juror expresses such reservations about capital punishment as would prevent the juror from making an impartial decision on guilt or innocence. Magill v. State, 386 So.2d 1188 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981); King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981).
In Williams v. State, 228 So.2d 377, 379 (Fla. 1969), we said:
The Witherspoon case, however, makes it equally clear that the State is also entitled to a jury that is similarly impartial and neutral as to penalty. In essence then, Witherspoon recognizes that both the prosecution and the defense in a capital case are entitled to jurors who are impartial as to penalty. A prospective juror is considered impartial, even though he may have a natural bias against capital punishment, so long as his bias is not so strong as to preclude or prevent him from at least considering the issue of punishment. The decision leaves unaffected the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about the wisdom of the death sentence would prevent them from making an impartial decision as to defendant's guilt.
There is nothing in the record to suggest that the jurors selected were not in every way competent, qualified, and unbiased. If a qualified prospective juror is improperly rejected by the trial court, the trial should not be reversed unless through rejecting the qualified person, the necessity of accepting an objectionable juror has been created. It should be enough if it appears that the case has been tried by an impartial jury. Leaptrot v. State, 51 Fla. 57, 40 So. 616 (1906).
Section 924.33, Florida Statutes (1981), provides that no judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.
The records disclose that the state exercised only eight peremptory challenges out of eighteen that the trial court gave each side. The state had ten peremptory challenges left. Had the trial court denied the prosecution's challenge to any of the jurors in question for cause, the prosecution would have used those peremptory challenges it had remaining.
Even if the excusal of the jurors was error, it was harmless beyond a reasonable doubt. The United States Supreme Court has held that constitutional error may be harmless if the error is demonstrated to be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
I would affirm the judgment and the sentence.
NOTES
[1] Chandler raised 22 issues on this appeal in addition to the 2 we discuss in the text of this opinion. The main points argued under at least 5 of these 22 issues have been conclusively dealt with by prior decisions of this Court. These issues, followed by the decisions in which they have previously been addressed, are:

1) Whether the trial court erred by denying appellant's motion for presentence investigation. Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982).
2) Whether the trial court erred in denying appellant's motion to dismiss the indictment and/or declare the Florida death penalty to be unconstitutional. Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982); Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); Fleming v. State, 374 So.2d 954 (Fla. 1979).
3) Whether the trial court erred by refusing to order the state to elect its theory of prosecution between felony murder and premeditation. Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982); Welty v. State, 402 So.2d 1159 (Fla. 1981).
4) Whether the trial court erred in denying appellant's motion for a statement of particulars relative to aggravating circumstances. Tafero v. State, 403 So.2d 355 (Fla. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982).
5) Whether § 925.036, Fla. Stat., is unconstitutional in that it lacks a rational basis for the purpose for which it was enacted. Metropolitan Dade County v. Bridges, 402 So.2d 411 (Fla. 1981).
Three other issues in appellant's brief are directed toward purported errors in instructions or in the refusal to give requested instructions. We find no merit to these issues. Similarly, we find no error in the trial court's failure to grant a judgment of acquittal, nor in its findings in support of the death sentence. Substantial competent evidence exists in the record to support Chandler's convictions. Nor do we find, notwithstanding appellant's arguments, reversible error by the trial court in any of the following:
1) Denial of a Richardson inquiry relative to a purported change in the testimony of Dr. Cox, one of the pathologists called by the state;
2) Limiting voir dire examination to one attorney for each side;
3) Denial of a mistrial relative to the admission of certain allegedly inflammatory photographs of the bodies of the victims;
4) Limiting the cross-examination of Lowell Wolfe, a state witness;
5) A comment made by the court in sustaining an objection to a voir dire question posed by defense counsel;
6) Admonishing defense counsel in the presence of the jury for personal remarks directed against the prosecutor;
7) Refusal to grant funds to the appellant for various expert witnesses;
8) Denial of motions for change of venue and for individual voir dire concerning publicity;
9) Refusal to direct a "verdict" of life imprisonment following the state's presentation of evidence during the sentencing phase;
10) Denial of a motion for individual, sequestered voir dire.
[2] The significant common features of Chandler's previous crime and those charged here, as found by the trial court below, included:

1) In each, a victim's hands were bound behind him with an item belonging to the victim  in one case, a necktie, in the other, the victim's dog leash;
2) In each, the victims were first forcibly abducted to a relatively remote location;
3) The victims of each crime were beaten repeatedly about the head with a blunt instrument;
4) The victims in both instances were robbed;
5) The defendant utilized, to some extent, both a knife and a blunt instrument. The apparent difference that the Steinbergers were stabbed repeatedly may be explained by the fact that Chandler's previous victim, who was not stabbed, had survived the beating to testify against Chandler.
[3] The voir dire responses of venirewomen Brinson and Bittner clearly fail to provide any grounds, within the bounds of Witherspoon, for their excusal. A third prospective juror, Ms. Thomas, gave sharply conflicting responses to opposing counsel. Such ambiguity might lead us to conclude that Ms. Thomas had not shown unmistakably her inability to serve as an impartial juror in a capital felony case. Realizing, however, that the trial court was better able to observe Ms. Thomas' depth of conviction regarding the death penalty, we defer to his estimation of her ability to serve impartially.
[4] The following exchange between the state attorney and Mrs. Brinson took place during voir dire:

Mr. Stone: Well, let me ask it to you this way: Do you feel like you would hesitate in any way to render a verdict of guilty if you thought that he could be sentenced to death? Mrs. Brinson: If it was proved to me beyond a reasonable doubt or whatever that he was guilty by the evidence, I would vote guilty, death or no 
Mr. Stone: Now if you were in the advisory part of the sentence, is your feeling about the death penalty such that you would tend to be more inclined to vote life than you would death?
Mrs. Brinson: I might go towards life sentence.
[5] From voir dire examination of Miss Bittner by the assistant state attorney:

Mr. Midelis: That's your province. What we need to know is because of your beliefs, would you have a tendency to recommend life? That's the basic question and the basic issue.
Miss Bittner: If my opinion can be imposed on that, I would probably lean towards life rather than death, if they were equal, if the mitigating and the aggravating circumstances were weighed equally.