WARNER, Judge.
The appellant challenges his conviction and sentence for burglary, kidnapping, sexual *1279 battery, and robbery, contending that the trial court erred in allowing similar fact evidence of another crime to be presented against the appellant at trial. Because the collateral crime did not have such unique similarities as to constitute a “signature” of the perpetrator, the trial court erred in admitting the evidence, requiring the reversal of the appellant’s conviction and sentence.
Around 5:00 a.m. on July 5, 1990, the victim, a single female, awoke to find an intruder in her home, standing over her bed. A later police investigation revealed that the intruder’s point of entry to the home was a back bedroom window on the opposite side of the house from the victim’s bedroom. After slapping the victim in her face with his hand several times, the intruder instructed her to calm down and tied her hands behind her back with a piece of cord cut from her telephone line. The intruder then covered the victim’s head with a pillowcase and began going through her bedroom drawers. The intruder took approximately $70 and a ring from her dresser as well as a bracelet she was wearing. Then the intruder, using a sexual device which he found in the victim’s drawer, sexually battered her. However, he did not have intercourse with her, as he told her that he did not want to give her a venereal disease.
Thereafter, the intruder moved the victim, still tied up, into the living room and put her on a couch while he searched the rest of the home, taking a television and VCR. The intruder then cut the telephone lines and advised the victim that he was leaving one of her knives on a table so that she could free herself after he left. According to the victim, the intruder was soft spoken and very polite to her. However, she could not identify her attacker.
The collateral crime evidence which was admitted at the defendant’s trial involved another single female who was sexually assaulted and robbed at her home. Unlike the instant case, the collateral victim lived with her five year old daughter who was asleep in the home during the incident. The record does not reveal whether the collateral crime occurred within the same neighborhood as the charged crime, although both occurred somewhere in the general Fort Lauderdale vicinity. The intruder entered the home by removing jalousie windows on the opposite side of the house from the victim’s bedroom. In this case, the victim was awakened between 5:00 and 6:00 a.m. by the intruder, whom the victim positively identified as the appellant, as he was tying her hands behind her back. Appellant told her not to look at him and struck her in the eye with the butt of his knife. He removed some of the victim’s jewelry and then sexually battered her by forcing vaginal intercourse with her, during which he touched her in the vaginal area with a knife. He also asked her whether he would “catch anything from her.” He led her from her room to the bathroom, at her request, and then back again. Although he ransacked her bedroom, she did not testify that he searched any other part of the house. She further testified that throughout this incident the appellant yelled at her and was verbally abusive.
The trial court admitted the collateral crime evidence because the court found twenty-three points of similarity between the two crimes. However, most of the points were common to a large number of crimes committed in the south Florida area: the criminal acts were done by a single male, acting alone; the victims were women; the victim lived alone[1]; the perpetrator wore gloves; the crimes were committed about the same time of day; the intruder entered the home by removing a window (which accounted for three points of similarity on the list); telephone wires to the home were cut; the perpetrator used a knife; a sexual assault was involved, albeit significantly different in the two cases; jewelry was stolen; the perpetrator talked with the victims; and a portion of each home was ransacked.
Unfortunately, the trial court did not address the significant dissimilarities in the two *1280 crimes. For example, in the collateral crime, the appellant forced vaginal sexual intercourse with the victim and then asked her if he would contract a venereal disease from her. On the other hand, in the instant ease the intruder did not himself engage in sexual intercourse, telling the victim that he did not want to give her a venereal disease. This behavior is entirely different and does not amount to a unique point of similarity. Moreover, in the instant case the intruder was very polite and soft spoken, whereas in the collateral crime ease, appellant was abusive and constantly yelled at the victim. Finally, in the collateral case, the appellant only ransacked the bedroom and took jewelry, whereas the intruder in the instant case ransacked a larger portion of the home and, in addition to jewelry and money, took electronic equipment.
It is not enough simply to count points of similarity to determine whether a collateral crime is admissible under section 90.404(2)(a), which codifies the Williams rule.[2] See Sias v. State, 416 So.2d 1213 (Fla. 3d DCA 1982). Explaining the type of similarity which would make a collateral crime admissible, the supreme court in Drake v. State, 400 So.2d 1217 (Fla.1981), stated:
The mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being compared. A mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations. Given sufficient similarity, in order for the similar facts to be relevant the points of similarity must have some special character or be so unusual as to point to the defendant.
Id. at 1219. See also Heuring v. State, 513 So.2d 122, 124 (Fla.1987) (charged and collateral offenses must not only be strongly similar, but they must also share some unique characteristics which set them apart from other offenses).
Despite the number of similarities between the instant crime and the collateral crime, there are no special characteristics which are so unusual as to point to the defendant. See Drake, 400 So.2d at 1219. Even the detective who investigated the collateral crime admitted that the modus operandi of the collateral crime was not uncommon. Further, as pointed out above, the two crimes had significant points of dissimilarity.
A similar factual circumstance was present in Davis v. State, 376 So.2d 1198 (Fla. 2d DCA 1979). In that ease:
Both crimes involved a burglary and sexual battery. A window was used to gain entry into the homes of young women living alone. The crimes were committed within three weeks of each other and took place at about the same time of night. Money was taken in both cases. There were significant dissimilarities, however. Not only did the crimes occur in different parts of the city, but the manner in which the sexual assaults were committed and the attitude of the assailant toward the victim varied substantially. Moreover, in addition to taking money, the assailant in the collateral crime ransacked the house for objects of value.
Id. at 1199. The court concluded that these facts did not constitute more than a mere general similarity between the two crimes. Application of the Davis analogy to the facts of the two crimes involved in the instant case is unmistakable, and the result must also be the same. We therefore reverse and remand for a new trial.
STONE, J., and BROWN, LUCY, Associate Judges, concur.

. (Except the victim in the collateral crime did not live alone.)

. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).