RAMIREZ, J.
Fermín Torres appeals his convictions for second degree murder with a firearm and unlawful possession of a firearm in the commission of a felony. We affirm because the testimony as to Torres’ prior threat to kill Alfredo Sanchez was properly admitted.
Sanchez was shot in the head at close range. Julio Deoca found Sanchez dead at the entrance to his home. Deoca owned the farm where Sanchez lived and went to the Sanchez trailer after receiving several telephone calls informing him that Torres had shot Sanchez and that Orlando David Moneada had witnessed the shooting. After Deoca discovered the body, he called the police and then directed detectives to the adjoining farm where both Torres and Moneada lived. Neither man was home.
Moneada testified at trial that he, Sanchez, and Ricardo Valdez were sitting in Sanchez’s trailer when he saw Torres walk up, put the gun to Sanchez’s head and shoot. Moneada then wrestled the gun away from Torres and Torres fled. Mon-eada left the gun where it had fallen and went home. Moneada did not call the police because he is a three-time felon who had recently been released from prison and was afraid to be sent back to prison. Valdez was never heard from again.
Moneada further testified that after he returned home, he encountered Torres who asked the gun’s whereabouts. Mon-eada then went to Gustavo Puerto who called Deoca. Moneada claims to have been home all night, hiding from Torres. He called the police the following morning from a. payphone at a nearby restaurant.
Deoca testified that two weeks prior to the shooting, he had been at Sanchez’s place when Torres pulled up to the closed gate, yelling that he wanted to kill Sanchez. Torres was drunk, but was not violent or aggressive and did not have a gun. Deoca calmed him down and Torres left. Deoca did not take the threat seriously and even forgot about it until several weeks after the shooting.
Silvio Pera-Marti had been a close friend of Torres for many years. He testified that Torres and Sanchez had lived together, but Torres had asked Sanchez to move out after several arguments over *344 trivial matters. Pera-Marti stated that Torres called him from jail to ask him to sell some of Torres’ possessions and bring the money to the jail. Torres denied shooting Sanchez. During the third phone call, Torres told him where to find the gun and asked him to get rid of it. Pera-Marti went to Moneada to tell him about the gun, then told the police. The gun was never found. There was no physical evidence linking Torres to the shooting. Only Mon-cada’s testimony placed Torres at the scene.
Torres argues that evidence of his prior threat to kill Sanchez was improperly introduced to prove propensity and identity. Evidence of similar facts is admissible when relevant to any material issue, other than propensity or bad character. See Fla. Stat. § 90.404(2)(a)(2002). See also Williams v. State, 110 So.2d 654 (Fla.1959). Torres argues that Drake v. State, 400 So.2d 1217 (Fla.1981), requires reversal as the prior incident was dissimilar to what occurred at the actual shooting. However, Drake is distinguishable; as part of its modus operandi theory of identity, the State introduced evidence that Drake had sexually assaulted two different women on two prior occasions and both times had tied the victims’ hands behind their back. The Florida Supreme Court held that binding of the hands was not sufficiently unusual to point to the defendant and, as that was the only similarity to the current crime, the evidence was irrelevant to prove identity.
In contrast, Torres’ prior threat to kill Sanchez was relevant to establish motive and intent and was therefore admissible. While courts are strict in requiring similarity when collateral crimes are used to prove identity, the same is not the case where they are used to prove motive. See Finney v. State, 660 So.2d 674, 681-82 (Fla.1995) (“Overall similarity between the facts of the two offenses generally is necessary before the other crime evidence is considered relevant to the issue of identity. However, such is not the case when other crime evidence is used to prove motive.”) (citation omitted).
In Dennis v. State, 817 So.2d 741 (Fla.2002), the supreme court approved the use of collateral evidence that the defendant had previously stalked, threatened and assaulted the victim to prove motive. Id. at 762 (stating that “[although certainly prejudicial, the evidence of the nature of Dennis’s relationship with the victim was relevant to establish Dennis’s motive.”). Similarly, the fact that Torres had threatened to kill the victim on a prior occasion also demonstrates the nature of Torres’ relationship with the victim Sanchez. See also Brown v. State, 611 So.2d 540, 542 (Fla. 3d DCA 1992)(testimony as to prior threats to victim were properly admitted as evidence of motive, intent, and premeditation).
Affirmed.