PARIENTE, J.,
dissenting.
Jones was convicted of the murder of nineteen-year-old Carlos Perez, a young Hispanic male, who was found in a motel room in Melbourne, Florida, strangled and with his throat slashed. There was also evidence of sexual penetration. At trial, the jury was presented with extensive evidence, including testimony of medical examiners and investigators, and graphic autopsy photographs, pertaining to the unrelated murders of an elderly African-American couple, the Jameses, in their suburban home in Tennessee and one other, even more attenuated crime that occurred at a different time. The evidence of the unrelated collateral crimes, which essentially portrayed Jones as a serial killer, inevitably became a feature of the trial, requiring Jones to defend against three crimes instead of just one.
Our precedent, however, mandates that unrelated crimes be “strikingly similar” and “unusual” or of “special character” so as to pervade the facts in order to be admissible. Heuring v. State, 513 So.2d 122, 124 (Fla. 1987); Drake v. State, 400 So.2d 1217, 1219 (Fla. 1981). In this case, the three crimes—the one being tried and the two collateral crimes—even considered together, do not have the “close similarity of facts, a unique or ‘fingerprint’ type of information, for the evidence [of the collateral crimes] to be relevant.” State v. Savino, 567 So.2d 892, 894 (Fla. 1990) (citing Drake, 400 So.2d 1217; State v. Maisto, 427 So.2d 1120 (Fla. 3d DCA 1983); Sias v. State, 416 So.2d 1213 (Fla. 3d DCA 1982)).
The majority in this case conflates the superficial similarities between the crimes, such as the manner of death being strangulation and knife wounds to the neck, as sufficient to establish a “fingerprint” of Jones’s criminal activities. Although the manner of death in each crime discussed during Jones’s trial was similar, it was not “strikingly similar.” Heuring, 513 So.2d at 124. Before admitting the collateral crime evidence, the trial court heard testimony from Tom Davis, a certified profiler. Mr. Davis testified that he found four commonalities between all three murder scenes:[4] the presence of bindings and/or ligatures, the positioning of the bodies, the victims had their throats slit as well as several superficial knife wounds, and the lack of *349 defensive wounds on the victims’ hands, showing that the offender had absolute control over the victims’ bodies. However, despite these similarities, nothing about the positioning, ligatures, knife wounds, or lack of defensive wounds is so unique to these, and only these, crimes as to clearly identify Jones as the common perpetrator. None of the factors, individually or comprehensively, are so unique as to point to Jones’s “signature” or “fingerprint.”
The crimes do not share a single hallmark or unique identifying factor necessary to render these otherwise dissimilar crimes admissible. If the similarities noted by the majority were sufficient to render these collateral crimes admissible, then essentially any similarity to the crime being tried—such as strangulation, gunshot wounds to the head, or struggle, which are common in all murders—could be deemed sufficient to admit collateral crime evidence. In addition, in most cases of death caused by strangulation or stabbing, there is either an absence or presence of defensive wounds, so there is absolutely nothing uncommon about the absence of defensive wounds.
I am concerned not only about the serious due process problem arising from Jones having to defend against three unrelated crimes. I am also concerned that the majority’s holding expands the standard for admissibility of collateral crime evidence far beyond this Court’s carefully articulated precedent, which aims to “minimize the risk of a wrongful conviction” by setting “a strict standard of relevance” for admitting collateral crimes. McLean v. State, 934 So.2d 1248, 1255 (Fla. 2006).
All of the crimes presented during Jones’s trial lack the unique characteristic or combination of characteristics to set them apart from other offenses such that they point to Jones as the perpetrator. First, the James murders and the Perez murder are not substantially similar. The James murders occurred in a suburban home in Tennessee, whereas the Perez murder occurred in a motel in a high-crime area in Florida. The James murders involved two elderly, African-American victims and was perpetrated by Jones and an accomplice, whereas the Perez murder involved only a young Hispanic male victim and was perpetrated by Jones alone. The Perez murder also involved evidence of sexual assault, while the James murders did not.
Additionally, according to the Sentencing Order, Jones and Perez were coworkers at Dependable Temps, including in the days leading up to the murder. It is unclear why Jones murdered Perez; however, it does not appear that anything was stolen from Perez. See majority op. at 329. By contrast, as the majority explained, the Jameses appeared to have been murdered, at least in part, as part of a robbery. Jones was later found with the Jameses’ belongings, and there is evidence that Jones used Mrs. James’s credit card multiple times. Id. at 330.
To further illustrate the differences between the Perez and James murders, when analyzing whether the Perez murder should be admitted into evidence during Jones’s trial for the James murders, the Tennessee Supreme Court concluded that the evidence was not sufficiently similar to warrant admission and reversed Jones’s conviction in the James murders because it found the error of admitting evidence regarding the Perez murder was not harmless:
In light of our conclusion that the State failed to establish the Perez murder as a signature crime that could be used to prove the Defendant’s identity in the James murders, the admission of the evidence regarding the Perez murder was profoundly prejudicial. By allowing *350 the evidence of the Perez murder, a crime for which the Defendant had not been charged, the trial court created an opportunity for the jury to infer that the Defendant committed the uncharged murder and, therefore, must have committed the murders for which he was on trial.
State v. Jones, 450 S.W.8d 866, 899-900 (Tenn. 2014).
There is also no connection between the Perez and Gross murders, which occurred approximately one year apart. Jones knew Gross from when the two had been in jail together. Majority op. at 330-31. As the majority explained, after Jones and Gross were released from jail, “Jones sold some items to Gross, but Gross failed to pay for the items.” Id.[5] It appears that Jones grew angry about Gross’s outstanding debt, and this anger ultimately served as his motive to murder Gross. Id. at 331-32.
The majority relies on this Court’s opinion in Chandler v. State, 442 So.2d 171, 173 & n.2 (Fla. 1983), to support its conclusion that the evidence of the collateral crimes was properly admissible in Jones’s trial. See majority op. at 339. The crimes that the Court concluded were permissible collateral criminal evidence in Chandler had five distinct similarities: (1) each victim’s hands were bound behind him; (2) the victims wex*e first forcibly abducted in each crime; (3) the victims wei’e each beaten repeatedly about the head with a blunt instrument; (4) the victims were robbed; and (5) the defendant utilized both a knife and a blunt instrument in each of the crimes. 442 So.2d at 173 <& n.2. However, Chandler is distinguishable from the instant case. In this case, there is not a similar motive in each of the crimes, nor was there a modus operandi such as abducting or sexually assaulting each of the victims. Although Jones may have known all of the victims prior to them deaths, as Mr. Davis testified, the victims all had different backgrounds and were all murdered for various reasons, at different times, and in different places.
Moreover, in Smith v. State, 866 So.2d 51 (Fla. 2004), we stated that collateral crime evidence cannot be “the feature of the trial or ... introduced] ... solely for the purpose of showing bad character or propensity.” Id. at 61. However, in Jones’s trial, the State discussed the collateral crimes at length because the trial court determined that such explanation was necessary to show how the crimes were connected. In fact, the State was permitted to read into evidence the testimony of Young, Jones’s accomplice in the James murders, which explained in-depth the Jameses’ deaths. The jury also heard the testimony of Tennessee criminal investigators and the Tennessee medical examiner, and reviewed numerous photographs of the Jameses’ bodies and other exhibits.
The State made a similar presentation in relation to the murder of Keith Gross. Gross’s father was permitted to testify and identify a photograph of his son. Then the medical examiner on Gross’s case testified and presented photographs, reports, and records relating to the autopsy. A Fort Lauderdale investigator also presented photographs of the crime scene in Gross’s murder. Allowing the State to present such extensive evidence of the three collateral crimes could have likely led the jury to perceive the defendant as a serial killer.
Finally, regardless of whether the collateral crimes were relevant, even relevant evidence must be excluded when “its probative value is substantially outweighed by the danger of unfair prejudice.” § 90.403, Fla. Stat. (2013); accord majority op. at *351 340. The majority recognizes this eviden-tiary principle but then dismisses it, stating that “Jones has not established that the prejudice was unfair or that it substantially outweighed the probative value of the evidence.” Majority op. at 340. However, it is inconceivable that the “danger of unfair prejudice” to Jones created by admitting evidence of three previous, atrocious murders did not “substantially outweigh[ ]” any probative value it provided. § 90.403, Fla. Stat. (2013). Indeed, the majority admits that this evidence was “inherently very prejudicial.” Majority op. at 340.
As we explained in McLean, “ ‘[sjimilar fact evidence that the defendant committed a collateral crime is inherently prejudicial’ because it ‘creates the risk that a conviction will be based on the defendant’s bad character or propensity to commit crimes, rather than on proof that he committed the charged offense.’ ” 934 So.2d at 1255 (quoting Heuring, 513 So.2d at 124); see Goodwin v. State, 751 So.2d 537, 547 (Fla. 1999); Czubak v. State, 570 So.2d 925, 928 (Fla. 1990). While all evidence presented in a murder trial may be prejudicial, collateral crime evidence heightens this prejudice. Thus, this Court requires that, to be admissible, collateral criminal evidence must “share some unique characteristic or combination of characteristics which sets them apart from other offenses.” Heuring, 513 So.2d at 124.
Accordingly, extraordinary care must be taken before evidence of collateral crimes is admitted. As we explained in Drake:
The mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being compared. A mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations. Given sufficient similarity, in order for the similar facts to be relevant the points of similarity must have some special character or be so unusual as to point to the defendant.
400 So.2d at 1219 (emphasis added.) Therefore, sufficient similarity is a threshold but not determinative of admissibility. Once the threshold of similarity is met, the inquiry is whether the “identifiable points of similarity ... pervade” the facts and whether the similarity is of “special character” or “so unusual” as to identify the defendant. Id. As demonstrated above, in this case, it is clear that this high threshold was not met and the majority has improperly conflated the commonplace characteristics that the crimes share with the type necessary to establish the unique identifying characteristic of a common perpetrator.
Accordingly, I respectfully dissent.

. There were three murder scenes but four murder victims—Perez, Gross, and the James-es—because the Jameses were murdered at the same scene. See majority op. at 330-31.

. According to the Sentencing Order, these "items” were pieces of furniture,