DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ZACHARY NATHANIEL MUSIC,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-0018

[December 4, 2024]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert B. Meadows, Judge; L.T. Case No. 312020CF000598B.

Carey Haughwout, Public Defender, and Siobhan Helene Shea, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Anesha Worthy, Senior Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

In this appeal from a conviction and sentence for attempted murder and burglary of a vehicle, the trial court allowed *Williams*[1] rule evidence from the appellant's co-defendant, who testified that he committed forty to fifty similar burglaries with appellant. We reverse, as the testimony did not meet the *Williams* rule test, and it was highly prejudicial.

The State charged appellant by information with burglary while armed and wearing a device to conceal his identity; grand theft of a firearm while wearing a device to conceal his identity; and attempted first-degree murder for discharging a firearm resulting in great bodily harm. The State alleged that on November 24, 2019, appellant, and a co-defendant burglarized the vehicle of a woman (A.L.) and stole her gun. On the same night, the co-defendant burglarized a truck owned by the victim of these charged crimes (G.C.), while appellant stood by as lookout. Appellant shot G.C. with the stolen gun when G.C. confronted the co-defendant during the burglary.

---

[1] *Williams v. State,* 110 So. 2d 654 (Fla. 1959).

Both appellant and the co-defendant were wearing masks and hooded jackets to conceal their identities during the entire criminal episode. The co-defendant pled guilty and testified for the State at appellant's trial.

Prior to trial, the State filed a notice of intent to introduce *Williams* rule evidence during the co-defendant's testimony of the multiple times that he and appellant had committed car burglaries while masked. The court held a *Williams* rule hearing. The State argued that testimony from the co-defendant about his history of "car hopping" with appellant was inexplicably intertwined with the charged offenses, and it went to identity and motive, which was admissible under the *Williams* rule.

The State called the co-defendant as a witness. The co-defendant testified that he and appellant were close friends, and they hung out above five days a week in the year leading up to the shooting. The co-defendant testified that he and appellant would break into cars by pulling on doors to check if the cars were open, which they called "car hopping." They would car hop at night, wearing masks, gloves, and jackets so that cameras would not identify them, and they would not leave fingerprints. The co-defendant testified that they usually car hopped in his neighborhood. They had done so about forty or fifty times, although the co-defendant had also car hopped with other people a few times. The co-defendant and appellant would steal money, or items to sell for money. The instant crime was the only time when the co-defendant had seen appellant, or any other person, shoot a car hopping victim.

Appellant argued that the court should bar testimony about the prior car hopping burglaries, because the evidence was unduly prejudicial. Appellant's defense was based on lack of evidence of identity. Although the incident was caught on video, the shooter could not be identified from the video. The main evidence of appellant's identity as the shooter came from the co-defendant. His testimony about the previous robberies was highly prejudicial, because it suggested appellant had the propensity to commit these burglaries. Appellant also argued that the State had not presented sufficient evidence that these previous car hopping burglaries actually occurred, the only evidence being the co-defendant's testimony. Furthermore, the instant crime was not sufficiently similar, because none of the other burglaries involved a firearm or a shooting.

The court allowed the admission of the testimony, finding that the co-defendant's testimony was not being offered to prove propensity, but to prove motive, intent, planning, knowledge, and/or modus operandi, and that its probative value outweighed any prejudicial effect. Appellant

renewed his objection before the co-defendant testified, which the court overruled.

At trial, the co-defendant testified that he and appellant used to hang out at the co-defendant's house and burglarize cars in the neighborhood, although he also testified that he burglarized cars with people other than appellant. Appellant was at the co-defendant's house on the date of the charged crime, and the two decided to burglarize cars that night, which the co-defendant estimated that they had done together *forty or fifty times before*. According to the co-defendant, they had not used a gun in any other car burglary.

The co-defendant testified that in their previous car burglaries, they would sometimes work together and sometimes work separately, but when they were separate, they were near each other. On the night in question, the co-defendant wore a black jacket, appellant wore a black and red jacket, and they both wore masks and gloves. Earlier in the evening, they were burglarizing other vehicles, but the co-defendant never saw appellant take a gun or possess a gun. Sometime later, they were together in the co-defendant's neighborhood when the co-defendant entered an unlocked pickup truck. A person, later identified as the victim G.C., came and shoved the co-defendant into the truck and shut the door. The co-defendant was scared and started screaming and kicking the door until it opened, and then he ran away. Appellant was across the street from the co-defendant, about forty feet away, while this was happening. As the co-defendant ran away, he saw appellant raise his arm and shoot a gun, aimed in the direction from which the co-defendant was running. The co-defendant saw a flash and heard the gun shoot once or twice. He also heard a man screaming and later heard an ambulance.

The co-defendant was wearing a mask the whole time he was in the truck, but he dropped the mask while he was running away. Appellant ran behind the co-defendant and eventually caught up to him. Appellant put both his and the co-defendant's jackets into a backpack.

According to the co-defendant, this night was the only time one of their burglary victims had been shot. The co-defendant denied shooting the gun and identified appellant as the shooter. The co-defendant could not recall how many cars they had burglarized before G.C.'s car.

Sometime later, the co-defendant was arrested and charged with two counts of burglary of a conveyance while masked; grand theft of a firearm while wearing a mask; and attempted felony murder. He entered an open plea to the charges. He admitted that he had lied to law enforcement about

3

the crime at first, but he decided to tell the truth after he was charged with attempted murder.

While the prosecution did not make the co-defendant any promises about his sentence in exchange for his testimony, he hoped that his testimony would benefit him regarding the attempted felony murder charge by showing that he did not want a gun to be used. The co-defendant also hoped to ultimately be sentenced to time served.

The remaining evidence from the State provided little to tie appellant to the crime. The victim G.C., who had been shot in the hand, could not identify the individual who had shot him, noting only that the assailant had been wearing a dark jacket. He ultimately identified a red and black jacket shown to him by law enforcement. This was acquired when the co-defendant and appellant were interviewed by the police, and appellant had worn a red and black jacket to the interview. Police were able to identify the gun stolen from A.L.'s truck as the weapon used to shoot at the victim, but they could not independently tie the gun to appellant.

After closing argument, the trial court submitted the case to the jury. The jury found appellant guilty as charged on all three counts. The trial court adjudicated appellant guilty and sentenced him to life in prison. Appellant files this appeal from the conviction and sentence.

### *Williams* Rule Evidence

Appellant contends that the court erred in allowing the co-defendant to testify that he had committed forty to fifty car burglaries with appellant prior to the two burglaries on the night of the incident. We agree. Not only was the evidence inadmissible as similar fact evidence, but it was also so prejudicial that the court should have excluded it.

"The standard of review for the admission of *Williams* rule evidence is abuse of discretion." *Ricketts v. State*, 125 So. 3d 194, 195 (Fla. 4th DCA 2013).

> Similar-fact evidence, or *Williams* rule evidence, is "admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity." *DeLuise v. State*, 72 So. 3d 248, 251 (Fla. 4th DCA 2011) (quoting § 90.404(2)(a), Fla. Stat.). "In determining the admissibility of

4

collateral crime evidence, the trial court must make two determinations: (1) whether the evidence is relevant or material to some aspect of the offense being tried, and (2) whether the probative value is substantially outweighed by any prejudice." *Santiago* [*v. State*], 70 So. 3d [720, 725 (Fla. 4th DCA 2011)]."

*Id.* In addition, before admitting *Williams* rule evidence, the trial court must also determine that the defendant committed the previous crime. *See Robertson v. State*, 829 So. 2d 901, 907 (Fla. 2002) ("Before admitting *Williams* rule evidence, it is incumbent upon the trial court to make multiple determinations, including whether the defendant committed the prior crime . . . .").

The only evidence in this case of forty to fifty prior car burglaries committed by appellant was the co-defendant's testimony. Nothing in the record suggests that these prior crimes were documented in any way, such as by a police report or by neighborhood investigation. No dates were given, other than that the burglaries occurred during the preceding year.

"Before evidence of a collateral offense can be admitted under the *Williams* Rule, there must be clear and convincing evidence that the former offense was actually committed by the defendant." *Audano v. State*, 641 So. 2d 1356, 1359 (Fla. 2d DCA 1996). Here, the co-defendant's testimony as to these crimes does not constitute clear and convincing evidence sufficient to even pass this first hurdle to be admitted. To allow a co-defendant to testify that a defendant participated in other unknown crimes of the same nature prevents a defendant from adequately preparing to defend against such accusations. It could prompt co-defendants to give testimony impossible to disprove and highly prejudicial to the defendant.

The main issue in this case was the identity of the shooter. The co-defendant identified appellant as the individual with him and bolstered his own testimony by testifying that he and appellant had "car hopped" forty to fifty times in the past year, but none of those prior crimes involved a gun or a shooting. Where identity is at issue, the collateral crime must have a "signature" element to it.

In *McLean v. State*, 934 So. 2d 1248 (Fla. 2006), our supreme court instructed that when collateral crimes are admitted for the purpose of establishing a defendant's identity, the collateral crime must be substantially similar to the charged crime:

[I]n cases where the purported relevancy of the collateral crime evidence is the identity of the defendant, we have required "identifiable points of similarity" between the collateral act and charged crime that "have some special character or be so unusual as to point to the defendant." *Drake v. State*, 400 So. 2d 1217, 1219 (Fla. 1981). This is because "[t]he mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being compared." *Id.* Thus, "[a] mere general similarity will not render the similar facts legally relevant to show identity." *Id. . . .*

We have also explained that "[a]lthough similarity is not a requirement for admission of other crime evidence, when the fact to be proven is, for example, identity or common plan or scheme it is generally the similarity between the charged offense and the other crime or act that gives the evidence probative value." [*Williams v. State*, 621 So. 2d 413, 414 (Fla. 1993)].

*Id.* at 1255 (second, third and fourth alterations in original); *see also Miller v. State*, 791 So. 2d 1165, 1170 (Fla. 4th DCA 2001) (quoting *Sias v. State*, 416 So. 2d 1213, 1215 (Fla. 3d DCA 1982)) ("It is not enough that there is greater similarity than dissimilarity between the crimes, but rather there must 'be something so unique or particularly unusual about the perpetrator or his modus operandi that it would tend to establish, *independently of an identification of him by the collateral crime victim*, that he committed the crime charged.'").

Review of the co-defendant's testimony fails to show a great similarity between the "forty to fifty" prior crimes and the instant case. As the co-defendant described it, the "car hopping"—pulling on car doors and burglarizing unlocked cars—was usually in his neighborhood. He and appellant would also wear face masks, gloves, and jackets to conceal their identities. We do not find these characteristics of the alleged prior crimes to be sufficiently unique to constitute a means of identifying appellant for this crime. Even the co-defendant testified that each car hopping incident was different. Moreover, the co-defendant testified in the *Williams* rule hearing that he had also gone "car hopping" with other individuals. Thus, this conduct was not unique to appellant.

At the time of this shooting, the co-defendant stated that appellant was across the street, rather than burglarizing the truck with him. When the co-defendant screamed after being caught by the victim, he saw appellant

raise his hand with a gun in it and saw a flash. Significantly, according to the co-defendant, none of the prior burglaries had involved a gun.

The evidence also would not be admissible as showing a plan or modus operandi. In *Gadson v. State*, 941 So. 2d 573 (Fla. 4th DCA 2006), the defendant was charged with burglary of a home, and the State introduced collateral crime evidence to establish a modus operandi. *Id.* at 575. In both crimes, the defendant allegedly rented a car from Enterprise, parked close to a home where someone was outside, entered the home, unexpectedly encountered someone inside, and fled in the nearby rental car. *Id.* at 575–76. We held that the trial court had improperly admitted this collateral crime evidence, because both described "garden-variety burglaries." *Id.* at 576.

Additionally, in *Williams v. State*, 662 So. 2d 419 (Fla. 3d DCA 1995), the defendant was charged with a "smash-and-grab" robbery, in which he allegedly had shattered the passenger window of the victim's car, grabbed a purse, and fled on a bicycle. *Id.* at 420. At trial, a police officer testified that he had observed and arrested the defendant a few hours after the charged offense, after the officer caught the defendant clutching a purse as he ran away from another car that had a smashed window. *Id.* The Third District reversed, finding that the collateral crime evidence was not sufficiently similar, writing that "[w]hile the time, date, location, and offense were somewhat similar, the police officer's testimony indicated 'smash-and-grab' robberies were 'common.'" *Id.* The Third District held that the collateral crime evidence "[did] not rise to the level of uniqueness required." *Id.*

Like *Gadson* and *Williams*, this case concerns prior burglaries that were similar to the instant burglaries but were not unique in their own nature. Both the charged and previous burglaries involved the co-defendant and appellant entering and rummaging through unlocked cars while wearing clothing that concealed their identities, but rummaging through unlocked cars is not a particularly unique crime. Thus, following *Gadson* and *Williams*, "car hoppings" are more like "common" or "garden-variety" car burglaries, which were not sufficiently unique to be admitted as collateral crimes.

Even if the prior "car hopping" incidents could provide some other relevance to an issue in the case, we also conclude that the co-defendant should have been barred from testifying about the number of prior burglaries, as this testimony was highly prejudicial and identified appellant as a serial burglar with propensity to commit crimes. The State did not need to establish the number of times that appellant and the co-

defendant went "car hopping." The co-defendant could have described the night's activities without mentioning the previous burglaries at all.

### The Prior Car Burglaries Are Not Inextricably Intertwined With The Charged Crimes

The State also contends that the evidence was inextricably intertwined with the crimes charged and should have been admitted for that reason. When collateral crimes are inextricably intertwined with the charged offenses, the evidence is admitted under section 90.402, Florida Statutes (2023), which simply provides that "[a]ll relevant evidence is admissible, except as provided by law." "Evidence is inextricably intertwined if the evidence is necessary to (1) adequately describe the deed, (2) provide an intelligent account of the crime(s) charged, (3) establish the entire context out of which the charged crime(s) arose, or (4) adequately describe the events leading up to the charged crime(s)." *Dorsett v. State*, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006) (internal citations and quotation marks omitted).

Here, the co-defendant testified generally about these prior burglaries with appellant, but failed to provide specifics. Except for the burglary of A.L.'s car where the gun was taken, and the subject of the car burglary count and grand theft counts, none of these previous burglaries were committed on the night in question. The co-defendant could not even testify as to when they had occurred. Thus, the co-defendant's testimony about the prior burglaries was not necessary to establish the context of the events on the night in question and should not have been admitted as evidence of inexplicably intertwined collateral crimes. *Cf. id.* at 1216 (holding that evidence of four uncharged narcotics sales that had occurred within two hours of charged narcotics sale was necessary to establish context of charged crime); *Griffin v. State*, 639 So. 2d 966, 969 (Fla. 1994) (holding that evidence that defendant burglarized motel room shortly before stealing a car was inexplicably intertwined because it explained how the defendant obtained the keys to the stolen car).

In *Thomas v. State*, 885 So. 2d 968 (Fla. 4th DCA 2006), we reversed a defendant's conviction for robbery in part because the trial court had admitted two codefendants' testimony about six robberies that they had committed with the defendant in the hours before the robbery which was the subject of the criminal offense. *Id.* at 976. The co-defendants testified that they had also committed the charged offense with the defendant.[2] *Id.*

---

[2] Similar to this case, the co-defendants in *Thomas* were to receive a benefit for their testimony.

at 970–71.  While the State claimed these other robberies were inextricably intertwined and showed a common intent, we rejected that reasoning.  We explained:

> The admission of these six Dade County armed robberies was *not* necessary to describe the underlying offense and without this evidence the State would *not* have been unreasonably hampered in the presentation of its case.  The prosecution was clearly capable of presenting its case in a manner so as not to encompass or even address the Dade County armed robberies, but by simply focusing on the crime charged and Thomas's alleged involvement and participation.

*Id.* at 975.

Similarly, in this case, the prior "car hopping" burglaries were not intertwined, as these crimes did not even occur close to the charged crime.  The prior burglaries were "not necessary to describe the underlying offense," not required to put the crime in context, and not required to adequately describe the crime charged.  Therefore, the prior burglaries were inadmissible as inextricably intertwined evidence.

### Harmful Error

"Improperly admitting *Williams* rule evidence is presumed harmful error."  *Williams*, 662 So. 2d at 420.  Here, the co-defendant not only testified that he and appellant had previously burglarized cars, but he testified that they had done so "forty or fifty times."  This was extremely prejudicial, as it painted appellant as a serial burglar.  Except for the victim identifying the jacket worn by appellant as the same as the jacket worn by the shooter, no evidence tied appellant to the crime other than the co-defendant's testimony, which he admitted he was giving in order to reduce his sentence.  The fact that appellant had frequently burglarized cars with the co-defendant reasonably may have influenced the jury to believe appellant was the co-defendant's partner, and the victim's shooter, on the night in question.  Under the harmless error test, the State must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."  *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).  The State cannot show beyond a reasonable doubt that the co-defendant's testimony about forty to fifty prior burglaries was harmless.

**Conclusion**

The trial court erred by admitting the co-defendant's testimony that the appellant had committed forty to fifty car burglaries. The evidence was not proper *Williams* rule evidence nor was it inextricably intertwined with the criminal episode. We reverse and remand for a new trial. Because we are reversing for a new trial, we do not address the remaining issues, as most are rendered moot.

*Reversed and remanded for a new trial.*

GROSS and CIKLIN, JJ., concur.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***